984 A.2d 478

Max C. MALONEY, Individually and as Administrator
of the Estate of Linda E. Maloney,

v.

VALLEY MEDICAL FACILITIES, INC., d/b/a the Medical Cen-
ter, Beaver Heritage Valley Health System, Inc., Beaver Inter-
nal Medicine Association, Tri–State Medical Group, Inc.,
Brighton Radiology Associates, P.C., Maurice Prendergast,
M.D., and, Richard E. Brennan, M.D.

Appeal of: Maurice Prendergast, M.D., Beaver
Internal Medicine Association and Tri–
State Medical Group, Inc.

Supreme Court of Pennsylvania.

Argued March 4, 2009.

Decided Nov. 24, 2009.

400

John M. Giunta, Cipriani & Werner, P.C., John Wesley Jordan, IV, Matis Baum Rizza O'Connor, P.C., Pittsburgh, for Maurice Prendergast, M.D., et al.

Gregory Buchwald Heller, Young Ricchiuti Caldwell & Heller, L.L.C., Philadelphia, Rudolph L. Massa, Massa Law Group, P.C., for Max C. Maloney.

Deborah A. Kane, Marshall J. Tindall, Weber, Gallagher, Simpson, Stapleton, Fires & Newby, LLP, Pittsburgh, for Valley Medical Facilities Inc., et al.

Kristin L. Pieseski, Lauren R. Ames, Davies, McFarland & Carroll, P.C., Pittsburgh, for Richard E. Brennan, M.D., et al.

George Gerasimos Rassias, Schmidt, Kirifides, Pearson, Koutcher & Fridkin, P.C., Media, for Pennsylvania Association for Justice, amicus curiae.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## *OPINION*

Justice SAYLOR.

Appeal was allowed to consider whether a plaintiff's release of principals whose potential liability was vicarious also discharges the plaintiff's claims against the agent, regardless of an express reservation of rights.

Appellee commenced the present medical malpractice action grounded on an asserted failure to timely diagnose and treat osteosarcoma in his wife, Linda Maloney. He alleged, among other things, medical negligence on the part of Appellant Maurice Prendergast, M.D. (an internist) and Richard E. Brennan, M.D. (a radiologist), as well as vicarious liability on the part of institutional defendants associated with these physicians.

Following settlement discussions, Appellee entered into a settlement with Dr. Brennan, funded by such physician's primary liability insurer and the Medical Care Availability and Reduction of Error Fund in its capacity, effectively, as an excess insurer. *See generally Carrozza v. Greenbaum*, 591 Pa. 196, 219–20 n. 23, 916 A.2d 553, 568 n. 23 (2007) ("For judgments in excess of the provider's primary insurance, up to a statutory limit, the MCARE Fund satisfies the judgment."). Appellee executed a joint tortfeasor release surrendering all claims "in any way connected with all medical professional health care services rendered by the above named Health Care Providers." Joint Tortfeasor Release, Oct. 24, 2006, ¶ 1. Notably, the "above named Health Care Providers" included the institutional defendants associated with Dr. Prendergast,

namely, Appellants Beaver Internal Medicine Association and Tri–State Medical Group, Inc. (hereinafter "Employers"),[1] but not Dr. Prendergast himself. *See id.* Further, a second paragraph of the release was included to expressly reflect a reservation of rights against Dr. Prendergast. *See Id.* at ¶ 2 ("It is understood that I, Max C. Maloney, am not hereby releasing any claims or demands that I have against Maurice D. Prendergast, M.D. However, I am agreeing to limit my potential recovery against Maurice D. Prendergast, M.D. pursuant to the provisions in paragraphs 3, 4, 5, 6, and 7.").[2] The intent was also expressed in the release that it was to comply with and be interpreted in accordance with the Uniform Contribution Among Tortfeasors Act.[3]

Thereafter, Dr. Prendergast and Employers filed motions for summary judgment, each asserting that the language of the release discharged all direct and derivative claims arising from Dr. Prendergast's conduct, based on the common-law rule governing releases. *See Mamalis v. Atlas Van Lines, Inc.,* 522 Pa. 214, 560 A.2d 1380 (1989) (holding the release of an agent operates to release the principal from vicarious liability claims, regardless of any attempted reservation of rights);[4] *Pallante v. Harcourt Brace Jovanovich, Inc.,* 427

1. Parenthetically, the parties do not specifically develop why Employers were included among the parties benefitting from a release of liability deriving from claims against Dr. Brennan. Appellee's brief suggests, however, that Employers' corporate structure may have been such that one or both bore a principal/agent relationship with both Drs. Prendergast and Brennan.

2. Ensuing provisions of the release effectuated a pro-rata reduction of any verdict against Dr. Prendergast, measured by any liability attributed to the settling defendants, and a hold-harmless commitment. The remaining claims against Dr. Prendergast were also limited to the primary limits of his insurance coverage.

3. Act of July 9, 1976, P.L. 586, No. 142 § 2 (codified at 42 Pa.C.S. §§ 8321–8327) (the "UCATA").

4. The UCATA abrogated the broader common-law rule that payment by one tortfeasor would release all others regardless of the parties' intent, insofar as it applied to joint tortfeasors. *See* 42 Pa.C.S. § 8326 ("A release by the injured person of one joint tort-feasor ... does not discharge the other tort-feasors unless the release so provides, but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by

Pa.Super. 371, 629 A.2d 146 (1993) (applying *Mamalis* to require that the release of an agent follows, as a matter of law, from the release of a principal). Employers also contended that the express language of the release foreclosed all claims against them.

The common pleas court granted the respective motions, initially crediting the argument that the release encompassed all claims against all of the institutional defendants, including Employers. As to Dr. Prendergast himself, the court determined that the common-law release rule applied, per *Mamalis* and *Pallante.*

On appeal, the Superior Court agreed that the release encompassed all claims against Employers. *See Maloney v. Valley Med. Facilities, Inc.,* 946 A.2d 702, 706 (Pa.Super.2008). However, the intermediate appellate court differed with the common pleas court's reasoning and holding concerning Dr. Prendergast. In this regard, the Superior Court initially stressed the application of traditional contract principles to releases, including the policy of effectuating the intention of the parties via enforcement of the ordinary meaning of release terms. *See id.* at 706, 708 (citing, indirectly, *Buttermore v. Aliquippa Hosp.,* 522 Pa. 325, 328–29, 561 A.2d 733, 735 (1989)). The court then distinguished *Pallante,* and inferentially *Mamalis,* as follows:

In *Pallante,* we explained that the reason for the rule that release of the principal also releases the agent is that "the law seeks to protect an injured party's right to payment for a single injurious act from either a vicariously liable principal or an independently liable agent." Here, a jury might well consider to be multiple rather than singular acts of negligence Appellee Prendergrast's [sic] alleged misdiagno-

which the release provides that the total claim shall be reduced if greater than the consideration paid."). *Mamalis* held, however, that the UCATA did not extend to vicarious-liability claims, and thus, the common-law rule would be maintained in that setting at least where the express release was of the agent. *See Mamalis,* 522 Pa. at 221, 560 A.2d at 1383 ("We hold that absent any showing of an affirmative act, or failure to act when required to do so, by the principal, termination of the claim against the agent extinguishes the derivative claim against the principal.").

sis of Mrs. Maloney's condition, and his repeated failure to treat or even to disclose the existence of [a] bone cyst during the fourteen years prior to her death. This set of circumstances bears no resemblance to the single injury examined in *Pallante,* nor is the trial court's resolution of this matter congruent with its responsibility to implement the intent of the parties.

*Maloney,* 946 A.2d at 708 (internal citations omitted). Based on this reasoning, the Superior Court vacated the judgment as to Dr. Prendergast and remanded for further proceedings consistent with its opinion. *See id.*

█ Presently, Dr. Prendergast and Employers argue that the Superior Court disregarded *Mamalis'* holding that a release's purported reservation of a claim is ineffective in the vicarious liability scenario. *See Mamalis,* 522 Pa. at 221, 560 A.2d at 1383 ("A claim of vicarious liability is inseparable from the claim against the agent since any cause of action is based on the acts of only one tortfeasor."). Further, according to Appellants, the decision is irreconcilable with *Pallante. See Pallante,* 427 Pa.Super. at 377, 629 A.2d at 149 (finding *Mamalis'* reasoning "equally as applicable to instances of the release of the principal as it is to [the] release of the agent"). Appellants also indicate that, in 1999, the American Law Institute approved the same rule as that enunciated in *Mamalis. See* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 16 Reporter's Note, cmt. d (1999) ("Release of both the agent and the vicariously liable party upon a settlement with one of those parties is logically required [since o]nly one measure of responsibility will be assigned to all such parties."). Likewise, Appellants observe that the Subcommittee Note to the 2003 Revision of the Pennsylvania Suggested Standard Civil Jury Instructions opines that *Mamalis* and *Pallante* prevent subjecting an agent to duplicative actions by his principal and the original plaintiff. *See* PENNSYLVANIA SUGGESTED STANDARD CIVIL JURY INSTRUCTIONS § 4.20 (2008). Finally, Appellants submit that the Superior Court's decision may expose Dr. Prendergast to claims exceeding Appellee's actual damages should he be subject to a claim asserted by the

MCARE Fund under indemnity and/or equitable subrogation theories, *see generally, Judge v. Allentown and Sacred Heart Hosp. Ctr.*, 506 Pa. 636, 638–39, 487 A.2d 817, 818 (1985), in addition to litigation underlying the present appeal.

In opposition, like the Superior Court, Appellee relies on the general requirement to give effect to explicit release terms, such as those preserving claims against Dr. Prendergast. *See* Brief for Appellee at 10 ("Plaintiff settled his claims with one set of defendants, and signed a joint tortfeasor release that explicitly preserved, in the clearest possible language, his right to pursue claims against defendant Maurice Prendergrast [sic], M.D. That is what the parties agreed to, that is what the release says, and that is the partial settlement that the Trial Court approved."). Appellee recognizes the holding of *Mamalis*, indicating that it represents "sound policy [and] settled law." *Id.* at 13. Appellee explains, however, that *Mamalis'* central rationale focused on the inseparability of a claim of vicarious liability and that against the agent. *See Mamalis*, 522 Pa. at 221, 560 A.2d at 1383 (reasoning that "[a] claim of vicarious liability is inseparable from the claim against the agent since any cause of action is based on the acts of only one tortfeasor"). Appellee also develops *Mamalis'* concern with a "circle of indemnity," as follows:

> [*Mamalis*] noted that if the plaintiff were permitted to proceed against the principal, the principal would in turn seek indemnification from the ... settling plaintiff, because it is unlikely that the agent would settle unless the plaintiff agreed to reimburse the agent, in the event any other defendant sought contribution from the agent. "If plaintiff agrees to indemnify the agent for any claim by the principal in a release, then the settling plaintiff can gain no more than what he received under the release—the settlement amount agreed to by the agent." [*Mamalis*, 522 Pa. at 222,] 560 A.2d at 1383. This is what courts in other jurisdictions have called the "circle of indemnity." *See, e.g., J & J Timber Co. v. Broome*, 932 So.2d 1 (Miss.2006). This circle can only be

broken by a rule that bars claims against a vicariously liable principal after a primarily liable agent is released.

Brief for Appellee at 13.

Appellee contends that the above rationale does not extend to the present circumstances, since the case does not involve the release of an agent in a single-tort case, but rather, involves multiple separate acts of negligence and multiple tortfeasors. Further, according to Appellee, the circle-of-indemnity phenomenon does not apply where the written release is of the principal rather than the agent. *See* Brief for Appellee at 14 ("Permitting [Appellee] to pursue claims against Dr. Prendergrast [sic] is not a futile act, but rather a meaningful and important way of preserving his, and his family's, right to fair compensation. There is every reason to craft careful, considered rules that will both give effect to the parties' intentions and serve the ends of justice."). Although *Pallante* extended the common-law rule of *Mamalis* to the scenario entailing a matter-of-law release of an agent based on a written release of a principal, Appellee does not challenge the decision. Rather, he distinguishes *Pallante* based on the fact that there is no indication that the language of the written release included a reservation of rights, and on the ground that *Mamalis'* single-tort logic does not extend to scenarios encompassing allegations of multiple acts of negligence.[5]

In response to Dr. Prendergast's claim of exposure to excessive liability, Appellee suggests that the claim is grounded on a chain of factual and legal speculation. In this regard, Appellee notes that the *Judge* case referenced by Appellants

5. Appellee also offers extensive arguments to the interpretation that the release expressly preserves claims against Dr. Prendergast, and that only direct claims were released and not vicarious liability claims. Appellants' do not challenge the former contention, and it seems plain enough that the intent of the release was to preserve claims against Dr. Prendergast to the extent of his primary insurance coverage, in light of the express reservation of rights. On the latter point, however, Employers were awarded summary judgment and dismissed as defendants relative to all counts, including the vicarious liability claims. Appellee did not file a cross-petition for allowance of appeal from the Superior Court's decision affirming the judgment in this regard, and the dismissal of the vicarious liability claims represents the law of the case.

involved the MCARE Fund's predecessor, and that it is not clear that the MCARE Fund possesses the same authority to pursue indemnity and/or equitable subrogation claims. Further, Appellee indicates that there are no facts of record indicating that the MCARE Fund would sue a physician it effectively insures. Appellee also notes there are many layers of complexity in assessing the MCARE Fund's ability to proceed against Dr. Prendergast, including the impact of the pro-rata release and the availability of equitable defenses based on the fact that the MCARE Fund wrote the release, and the release purports to protect Dr. Prendergast from excess liability. *See supra* note 2.

Addressing the Restatement, Appellee observes, in the first instance, that it does not necessarily reflect the law of Pennsylvania. In this regard, Appellee explains that the referenced section addresses the percentage allocation of responsibility between settling and non-settling tortfeasors, an issue governed by settled Pennsylvania law, *see, e.g., Charles v. Giant Eagle Markets*, 513 Pa. 474, 481–82, 522 A.2d 1, 4–5 (1987), and not at issue in this appeal. According to Appellee, the commentary referenced by Appellants is also inapplicable, since, by its own terms, it applies to "[r]elease of both the agent and the vicariously liable party upon a settlement with one of those parties...." RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 16 Reporter's Note, cmt. d. Appellee argues that the comment does not apply to a released party who has not contributed to a settlement. *See* Brief for Appellee at 26 ("The reporter's note is premised on the notion that the non-settling defendant's share of responsibility has been discharged, and that has manifestly not occurred here."). Appellee also observes that the comment does not address the multiple-tort scenario presented by his claims.

Respecting the Pennsylvania Suggested Jury Instructions, Appellee explains that the note referenced by Appellants is appended to a standard instruction on a principal's right to indemnification from an agent. *See* PENNSYLVANIA SUGGESTED STANDARD CIVIL JURY INSTRUCTIONS § 4.20 (2008). Appellee indicates the charge and note do not address the issue pres-

ently before this Court, the effect of contract language expressly preserving claims against an agent, or the application of the rule in scenarios involving multiple torts and tortfeasors. In any event, Appellee observes that the standard jury instructions are advisory and that the law is reflected in the actual decisions of the courts.

Finally, Appellee offers the following policy argument similar to the *amicus* submission by the Pennsylvania Association of Justice:

> The partial settlement arrived at between [Appellee], Dr. Brennan, and various corporate entities and practice groups provides a powerful illustration of the wisdom of giving effect to the intention of the parties, in releases that partially settle malpractice cases. Some defendants and insurers—including the MCARE Fund—wanted to settle; Dr. Prendergrast's [sic] insurers did not. The partial settlement allowed the MCARE Fund to protect its own assets from a potential future liability, and to protect both Dr. Brennan and Dr. Prendergast from a potential liability that could have exceeded the limits of available insurance coverage. These benefits are in addition to the obvious, and universally acknowledged, more general benefits that flow from the amicable resolution of disputes.
>
> If [Appellants'] position is adopted, however, no careful plaintiff's attorney would ever accept a joint tortfeasor release in a case where the remaining defendant shared a common principal with another, released defendant. This is an increasingly common occurrence, as medical providers consolidate and hospital-based chains and large corporate healthcare systems increasingly dominate the landscape. Many medical providers work under the aegis of a network associated with large medical centers.

Brief for Appellee at 28.

As noted, we accepted review to determine whether the common-law rule requiring release of a principal upon release of an agent applies in the reverse scenario.[6] This question is

---

6. Federal courts sitting in diversity are divided in their predictions concerning this Court's resolution of this question. *Compare Rutherford*

one of law, and, thus, our review is plenary. Upon our review of the parties' respective positions, we find Appellee's to be persuasive.

As developed above, *Mamalis* sharply distinguished contribution among joint tortfeasors from the system of vicarious liability and indemnity. *See Mamalis*, 522 Pa. at 221, 560 A.2d at 1383 ("A claim of vicarious liability is inseparable from the claim against the agent since any cause of action is based on the acts of only one tortfeasor."). This aspect of its rationale is broad and can reasonably be read as extending to the present scenario.[7] Other passages of the decision, however, including the holding, are crafted more narrowly. *See id.* ("We hold that absent any showing of an affirmative act, or

v. *Gray Line, Inc.*, 615 F.2d 944 (2d Cir.1980) (predicting this Court would hold that a release of a secondarily liable tortfeasor does not effectuate a release of a primarily liable tortfeasor), *with Reis v. Barley, Snyder, Senft & Cohen LLC*, 484 F.Supp.2d 337, 349 (E.D.Pa.2007) (reasoning that, "in the absence of any other persuasive caselaw or data," the release of a principal releases the agent).

7. This and other lines of *Mamalis'* reasoning have been subject to reasonable differences among courts. *See, e.g., Woodrum v. Johnson*, 210 W.Va. 762, 559 S.E.2d 908, 914 (2001) ("If there were practical significance to this 'single share' theory, ... it would necessarily prohibit an injured plaintiff from maintaining an action solely against a derivatively liable defendant. But this Court has consistently repudiated such an approach, taking the position that a plaintiff is permitted to sue the principal either alone or together with the agent." (citations omitted)); *see also Saranillio v. Silva*, 78 Hawai'i 1, 889 P.2d 685, 699 (1995) (positing that reasoning similar to *Mamalis'* "confuses a release with the theory of satisfaction," since it has the unstated premise that a compromise of one claim necessarily represents full satisfaction of all claims (citation omitted)).

For a contrary perspective concerning the *Mamalis* Court's decision to depart from the plain language of the UCATA in its determination that the parties subject to vicarious liability are not joint tortfeasors for purpose of the statute's provisions governing releases, see *Saranillio*, 889 P.2d at 694–98 (explaining that the relevant version of the UCATA defines "joint tortfeasors" broadly to encompass "two or more persons jointly or severally liable in tort for the same injury to person or property"; persons subject to vicarious liability fall squarely within this definition; and courts are obliged to given effect to the plain terms of a statute). *See generally* V. Woerner, Annotation, *Release of (or Covenant Not to Sue) Master or Principal as Affecting Liability of Servant or Agent for Tort, or Vice Versa*, 92 A.L.R.2d 533 (1963).

Further, consideration of the above differences is beyond the scope of the present appeal.

failure to act when required to do so, by the principal, termination of the claim against the agent extinguishes the derivative claim against the principal.").

■ What is most apparent from *Mamalis'* reasoning, however, is that it was directed to a simple fact pattern involving a single principal, a single agent, a single event, and consequences of the release of the party bearing primary liability upon settlement. *See id.* at 216–17, 560 A.2d at 1381. The Court simply did not consider the extension of the rule to complex factual scenarios such as the present one. Notably, the axiom that decisions are to be read against their facts, *see Commonwealth v. McCann*, 503 Pa. 190, 195, 469 A.2d 126, 128 (1983), prevents the wooden application of abstract principles to circumstances in which different considerations may pertain.

As Appellee develops, particularly in the medical malpractice arena, the landscape of claims and defendants can be very complex, given the potential involvement of multiple caregivers, an insurance scheme incorporating private and governmental elements, and oftentimes the high stakes attendant to claims of serious bodily injury or death. It is evident that the interests of justice are not advanced by the extension of an inflexible common-law rule to such scenarios,[8] at least where a number of the policy considerations underlying them (for example, the absence of alleged fault on the part of the party

8. Various courts and commentators have expressed concern with results under the common-law rule which they have considered harsh. *See, e.g., Saranillio*, 889 P.2d at 698 (reasoning that "elimination of the [common-law] rule removes a trap that has ensnared many unwary plaintiffs (and their attorneys), leaving them to suffer the harsh consequence of foregoing full recovery for their injuries"); James F. Thaxter, Comment, *Joint Tortfeasors: Legislative Changes in the Rules Regarding Releases and Contribution*, 9 HASTINGS L.J. 180, 182 (1958) ("The rule has been a dangerous trap for unwary litigants and attorneys ... [I]n many cases they have applied it with oftimes harsh and, perhaps, unjust results."). *See generally Russ v. General Motors Corp.*, 111 Nev. 1431, 906 P.2d 718, 722 (1995) ("[T]he harsh common law rule of release must yield to 'more enlightened' cases that promote the administration of justice."); 4 *Corbin on Contracts* § 931, at 355–57 (Supp. 1990) (discussing cases which abandon the "archaic and senseless strictures of the early common law" governing the rule of release "in favor of the modern approach of giving effect to the intentions of the parties").

subject to release as a matter of law) are not present.[9] *Accord Hill v. McDonald,* 442 A.2d 133, 138 n. 5 (D.C.1982) ("Certainly, as a matter of logic, it is hard to see how a principal could still be held vicariously liable after the release of its agent, the only real wrongdoer. But the converse is not at all obvious."). As Appellee persuasively argues, there is a substantial likelihood that such an extension would impede settlements, undermining the strong public policy favoring the voluntary compromise of claims. *See Nationwide Ins. Co. v. Schneider,* 599 Pa. 131, 143, 960 A.2d 442, 449 (2008); *cf. Woodrum,* 559 S.E.2d at 916 (discussing reasons favoring a recognition of partial settlements).

We also agree with Appellee that the primary-limits, pro-rata carve out, and hold-harmless provisions of the release, *see supra* note 2, diminish the weight of Dr. Prendergast's concerns about excessive liability exposure. In this regard, a specific assessment of the degree to which recovery overlaps is very difficult in the settlement context, where claims and defenses are being compromised in favor of a prompt and certain resolution. The resolution of claims may also depend upon factors extraneous to the merits, such as the amount of available insurance coverage,[10] or the plaintiff's assessment of a particular defendant's resources. The following observations from *Kellen v. Mathias,* 519 N.W.2d 218 (Minn.App. 1994), encapsulate this point:

9. Direct liability claims were asserted against Employers in Appellee's complaint; however, this appeal is limited to consideration of the vicarious liability claims.

10. The opinion in *Milton Hershey Med. Center v. Commonwealth, CAT Fund,* 573 Pa. 74, 821 A.2d 1205 (2003), cited by Madame Justice Greenspan in her responsive opinion, presents a very good illustration of the reality that many of these cases are about reaching multiple sources of insurance coverage.

Notably, *Milton Hershey* did not involve a dispute over the enforceability of a contractual reservation-of-rights. Thus, the suggestion, in Justice Greenspan's responsive opinion, that such decision provided this Court with an opportunity to limit *Mamalis'* effect on contractual reservations, *see* Concurring and Dissenting Opinion, at 493 n. 6, lacks foundation. Indeed, *Milton Hershey* expressly left open a claim asserting that access to the employer's insurance should be made available based on principles of quasi-contract. *See id.* at 87–88, 821 A.2d at 1213–14.

Certain situations may arise where a plaintiff might settle with a principal, but not intend to release the agent. For example, the settlement may represent the principal's solvency rather than the fair value of the claim; or the settlement may represent a compromise due to uncertainty as to whether the principle of respondeat superior legally holds the defendant vicariously liable for the acts of the other defendant. Thus, a plaintiff should not be deprived of a cause of action against an active tortfeasor when the plaintiff has not intentionally surrendered the claim.

*Id.* at 222–23.[11]

██ In the pre-trial settlement context, the amount of a plaintiff's damages are uncertain, since they have not been determined by a factfinder. Again, the pro-rata release and hold-harmless provisions of the release afford Dr. Prendergast credit for the amount of Employers' settlement, and under prevailing law Appellee would be entitled to a single satisfaction of such damages as would be determined by a factfinder in any event. *See generally Ryan v. Berman,* 572 Pa. 156, 169, 813 A.2d 792, 800 (2002) ("Pennsylvania law prescribes that a plaintiff is generally entitled to only a single satisfaction for her loss.").[12]

██ In the scenario entailing a plaintiff's surrender of vicarious liability claims only and express preservation of claims against an agent, we hold that the parties to a settlement should be afforded latitude to effectuate their express intentions. To the extent the Superior Court's decision in *Pallante* holds to the contrary, *see Pallante,* 427 Pa.Super. at 377, 629 A.2d at 149 ("Given the supreme court's decision that principal and agent are not joint tortfeasors, we conclude that

11. It is interesting to note that the settling agent in *Mamalis* had filed bankruptcy proceedings, *see Mamalis,* 522 Pa. at 216, 560 A.2d at 1381, but the *Mamalis* Court did not discuss this as a potential consideration in the plaintiff's settlement calculus.

12. As to Appellant's other arguments, Appellee is correct that the suggested jury instructions are not controlling and merely reflect the developed state of the law to the date of their publication. The Restatement provisions referenced by Appellant are discussed further below in our address of Justice Greenspan's responsive opinion.

the release of the principal acts as a release of the agent"), it is disapproved.[13]

In her Concurring and Dissenting Opinion, Justice Greenspan describes this Opinion as "creat[ing] an exception contrary to the rules of vicarious liability" and our mandate as a "pragmatic fashioning of a remedy for the present parties." Concurring and Dissenting Opinion, *op.* at 419–20, 984 A.2d at 491. Further, she characterizes our approach of permitting the effectuation of the parties' intentions as inapt, since their attorneys should have been aware that *Mamalis* facially applied (at least in Justice Greenspan's view) to a release of a principal to also require a release of the agent despite the express reservation of rights. *See id.* at 422, 984 A.2d at 493. Additionally, the Concurring and Dissenting Opinion posits that our analysis conflates joint-and-several liability with vicarious liability, explaining that the distinction is based on the mechanism by which liability is attached (contribution to the plaintiff's injury, on the one hand, versus legal imputation, on the other). *See id.* at 421–27, 984 A.2d at 492–96. Justice Greenspan contends that the rules of vicarious liability, as delineated in *Mamalis* and applied in *Pallante,* foreclose reservations of rights in the principal/agent setting, drawing support from a comment to Section 16 of the Restatement Third of Torts, Apportionment of Liability. *See id.* at 424–26, 984 A.2d at 494–95. In this regard, the Concurring and Dissenting Opinion maintains that this Court must endorse *Pallante,* since, in Justice Greenspan's words, "the proverbial cat has been out of the bag for two decades." *See id.* at 423, 984 A.2d at 493. Justice Greenspan nevertheless agrees with the fashioning of an "exception" for express reservations of rights against an agent when settling with and releasing a

---

**13.** The Superior Court's effort to distinguish *Pallante* is insufficient. Under its reasoning, claims entailing a single act of negligence on the part of a tortfeasor would be subject to a different rule than claims entailing multiple acts of negligence on the part of a single tortfeasor. *See Maloney,* 946 A.2d at 708. Such a division yields potential confusion and does not address the more fundamental concerns also pertaining in the single-act paradigm.

principal, albeit limited to the medical malpractice setting. *See id.* at 429, 984 A.2d at 497.

■ We have substantial differences with Justice Greenspan's perspective. Since this appeal presents a matter of first impression in this Court, the applicable "rule of vicarious liability" is unsettled. Thus, we do not view our decision as creating an "exception"; rather, we merely determine appropriate limits of *Mamalis*.[14] Significantly, the Concurring and Dissenting Opinion does not address the core principle, upon which we have relied (and upon which the parties' attorneys were free to rely), that the holding of a decision is to be read against its facts. *See McCann,* 503 Pa. at 195, 469 A.2d at 128. Here, *Mamalis,* a decision which expressly arose in the context of an agent release, simply does not provide controlling authority as pertains to the materially different circumstances surrounding the release of principals. Notably, as well, Justice Greenspan does not acknowledge the various passages of *Mamalis* which were directed expressly to the agent-release scenario.

■ With regard to the asserted conflation of joint-and-several and vicarious liability principles, the use of the term "joint and several liability" fosters some confusion, particularly when considered in relation to the vicarious liability setting. *See* Restatement (Third) of Torts, Apportionment of Liability § 13, Comment c. For this reason, the Third Restatement authors decided to merely use the words "legal imputation" in such context. *See id.* Notably, under either conception of joint-and-several or vicarious liability, the substantive impact is the same as concerns a plaintiff with a meritorious cause against the agent—the principal and agent are each liable to the plaintiff in the full amount of the claim, albeit there may be only a single satisfaction.

■ Some of the underlying confusion results from the fact that the word "joint" is sometimes used to refer to the

14. While certainly our decision is "court-created," as Justice Greenspan repeatedly observes, *Mamalis,* in the first instance, represents a court-created limitation on parties' ability to freely contract in the settlement of their claims. Our "court-created" recognition of *Mamalis'* logical limits therefore represents a lessening, and not an expansion, of court involvement in the consensual resolution of claims.

mechanism by which the parties became liable (each "jointly" contributing to the injury) and is sometimes used differently to reflect the fact that the parties have become jointly liable by whatever means. *See Crowell v. City of Phila.*, 531 Pa. 400, 409 n. 6, 613 A.2d 1178, 1182 n. 6 (1992). Although *Mamalis* highlighted the distinction between liability based on one's own acts versus liability imputed by law, *see Mamalis*, 522 Pa. at 220–21, 560 A.2d at 1383, the opinion did not recognize that joint-and-several liability imposed on joint tortfeasors shares some characteristics with vicarious liability. Joint tortfeasors generally are jointly-and-severally liable for the entire amount of a verdict, albeit that a jury may assign only a portion of fault to each. The policy justification for allocating 100 percent liability (from the plaintiff's perspective) to one who bears only, say, 40 percent of the responsibility is that, as between an innocent injured party and a culpable defendant, the defendant should bear the risk of additional loss. *See Harsh v. Petroll*, 584 Pa. 606, 620, 887 A.2d 209, 217 (2005). Thus, joint-and-several liability can be regarded as employing a form of legal imputation like that involved in the application of vicarious liability. The primary difference is simply that the imputation is of 60 percent of the damages in the above example of joint-and-several liability (since the defendant bears 40 percent of the responsibility of his own accord), whereas the general rule is 100 percent in the case of vicarious liability. The fact that a similar form of legal imputation exists in both scenarios, however, weakens the portion of *Mamalis'* reasoning to the degree it rests on the fact of imputation alone (which appears to be Justice Greenspan's focus) to distinguish the treatment of joint-and-several and vicarious liability in the settlement context.[15]

As to the Restatement, initially Comment d to Section 16 does lend some support to the concurring and dissenting position. The Restatement, however, also contains specific provisions relative to settlements which stress the application of principles of contract law, under which the effectuation of

---

**15.** *Mamalis'* reasoning is stronger in those passages of the opinion in which the agent-release scenario is addressed specifically.

the intentions of the parties to an agreement is the most salient feature. For instance, comments f and g to Section 24 indicate as follows:

> Settlement agreements are contracts and subject to contract law in their interpretation. The primary focus is on the intent of the parties to the agreement and ordinary effect should be given to that intent. . . .
>
> . . . When a settlement agreement specifies the parties who are released, the agreement is subject to contract-interpretation principles.

Restatement (Third) of Torts, Apportionment of Liability § 24 cmt. g. Thus, the Restatement sets up the same conflict as we resolve here between enforcing a default rule or the manifest intention of the parties regarding settlement.[16]

In developing her position that the "cat is out of the bag," Justice Greenspan's reasoning is that, because the Superior Court has long embraced a broad application of *Mamalis,* the ordinary jurisprudential principle that decisions are to be read against their facts can no longer apply in this Court's review. *See id.* at 423, 984 A.2d at 493. However, the Concurring and Dissenting Opinion references no decisions to support such a theory of judicial review. For very good reasons, our decisional law generally develops incrementally, within the confines of the circumstances of cases as they come before the Court. For one thing, it is very difficult for courts to determine the range of factual circumstances to which a particular rule should apply in light of the often myriad possibilities. The United States Court of Appeals for the Seventh Circuit expressed a similar thought in this way:

16. Wooden enforcement of the idea that vicarious liability cannot result in a division of any kind for any purposes and under any circumstances, even pursuant to a voluntary agreement of the parties, would mean that judicial approval could never be lent to a three-way settlement between a plaintiff, an agent-defendant, and his employer relative a claim entailing vicarious liability, where both defendants contribute directly to the settlement. Again, we find that the public policy prevailing in Pennsylvania of encouraging the voluntary settlement of claims militates against such inflexible rules.

> Judicial opinions are frequently drafted in haste, with imperfect foresight, and without due regard for the possibility that words or phrases or sentences may be taken out of context and treated as doctrines. We shouldn't like this done to our opinions and are therefore reluctant to do it to the opinions of other courts. No court, even a federal court in a diversity suit, is obliged to treat a dictum of another court (or, for that matter, its own dicta) as binding precedent.

*Northwestern Nat'l Ins. Co. v. Maggio,* 976 F.2d 320, 323 (7th Cir.1992).[17]

It is also an unfortunate reality that the length of time it takes for a matter to reach this Court is dependent upon many factors, including litigants' preferences and selection via a discretionary screening process entailing review of thousands of cases annually to accept only those few hundred considered to meet the prevailing criteria for review. For example, for whatever reason, the non-prevailing party in the intermediate appellate court may chose not to seek further review (as appears to have been the case with *Pallante* ). If the issue is raised by a litigant, it may not be chosen for review for any number of reasons, such as where it is not adequately raised, preserved, or framed. Even when review is sought and a question has been adequately raised and preserved, but this

---

**17.** In interpreting the statutory definition of "joint tortfeasor" under the UCATA, *Mamalis* departed from the definitional language of the statute providing that "[a]s used in this subchapter 'joint tortfeasors' means two or more persons jointly or severally liable for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." 42 Pa.C.S. § 8322. Specifically, *Mamalis* displaced the focus from the statutory litmus centered on the fact of liability alone in favor of the Court's own focus on the mechanism by which the parties became liable (actual contribution to the plaintiff's injury versus legal imputation). *See id.* at 220–21, 560 A.2d at 1383–84; *see also supra* note 7. Whatever the merits of *Mamalis'* reasoning in this regard, we decline to expand its ultimate legal effect upon settlement agreements to circumstances involving the release of principals. Thirty years ago, with the passage of the UCATA, the Legislature clearly shifted the tide away from the common-law rule pursuant to which "[a] release of one tortfeasor also necessarily worked a release of all others, regardless of the parties' intent." *Mamalis,* 522 Pa. at 218, 560 A.2d at 1382. The salutary reasons underlying its decision in this regard also support ours here.

Court denies review, we are not somehow estopped from considering the issue in a future case. For example, the Court recently overruled a twenty-year-old Commonwealth Court precedent decision as to which it had previously denied review twenty years before. *See Insurance Fed'n of Pa. v. Commonwealth, Dep't of Ins.*, 585 Pa. 630, 638, 889 A.2d 550, 555 (2005) (overruling *Prudential Prop. and Cas. Ins. Co. v. Muir*, 99 Pa.Cmwlth. 620, 513 A.2d 1129 (1986), *appeal denied*, 514 Pa. 637, 522 A.2d 1106 (1987)). Simply put, contrary to Justice Greenspan's position, there is no cat-out-of-the-bag doctrine limiting our review.[18]

Finally, Justice Greenspan's approach of limiting the effect of the holding of this case to the medical malpractice context is consistent with the principle that the holding of a decision is to be read against its facts. Thus, if there are material distinctions to be made with regard to other settlement scenarios which would impact on the extension of the above reasoning, litigants are certainly free to bring them to our attention in future cases outside the medical malpractice context.

The order of the Superior Court is affirmed.

Chief Justice CASTILLE, Justice EAKIN and BAER, Justice TODD and Justice McCAFFERY join the opinion.

Justice GREENSPAN files a concurring and dissenting opinion.

## CONCURRING AND DISSENTING OPINION

Justice GREENSPAN.

The majority has, in effect, created an exception contrary to the rules of vicarious liability set forth in *Mamalis v. Atlas Van Lines, Inc.*, 522 Pa. 214, 560 A.2d 1380 (1989) and its

18. Indeed, the Concurring and Dissenting Opinion does not develop the review principle by which Justice Greenspan is able, on the one hand, to maintain that this matter was finally settled by this Court long ago contrary to Appellee's position, yet, on the other hand, support the outcome of this decision. Justification for such a facially discordant position ordinarily would require some discussion of the doctrine of *stare decisis* and its exceptions.

progeny, including *Pallante v. Harcourt Brace Jovanovich, Inc.*, 427 Pa.Super. 371, 629 A.2d 146 (1993). Although I support the majority's pragmatic fashioning of a remedy for the present parties, I cannot join wholesale the majority's reasoning. Unlike the majority, I would expressly limit this new, court-created exception to releases containing an express reservation of rights in the context of medical malpractice litigation.

In *Mamalis*, this Court applied the principles of vicarious liability and held that the termination of a claim against an agent discharges any derivative claim against the principal. *Id.* at 1383.[1] Vicarious liability is a policy rule designed to allocate risk and ensure compensation to a tort victim. As this Court explained in *Crowell v. City of Phila.*,

> Vicarious liability, sometimes referred to as imputed negligence, means in its simplest form that, by reason of some relation existing between A and B, the negligence of A is to be charged against B although B has played no part in it, has done nothing whatever to aid or encourage it, or indeed has done all that he possibly can to prevent it ... Joint tortfeasor liability, on the other hand, arises when two or more persons acting together injure another. It is distinguished from vicarious liability in that liability attaches by virtue of the actions of each person as opposed to by operation of law.

531 Pa. 400, 613 A.2d 1178, 1181 (1992).

A claim of vicarious liability against a principal is indivisible and inseparable from the claim against the agent because the claim is based on one indivisible act of wrongdoing for which both the principal and agent are liable.[2] *Mamalis*, 560 A.2d at

1. This Court has never decided whether the reverse is also true. However, that situation has been addressed by the Superior Court. In *Pallante*, the Superior Court held that the release of a vicariously liable principal released an agent. 629 A.2d at 149. In the 16 years since *Pallante* was decided, this Court has not overruled the *Pallante* holding.

2. Unlike the liability of a vicariously liable principal, the liability of a joint tortfeasor is both direct and divisible because the tortfeasor actually contributed to the injury and the conduct of at least one other person also contributed to the injury. *Crowell*, 613 A.2d at 1182.

1383; *see also Milton S. Hershey Med. Ctr. v. Pa. Med. Prof'l Liab. Catastrophe Loss Fund,* 573 Pa. 74, 821 A.2d 1205, 1212 (2003) ("The rules of vicarious liability respond to a specific need in the law of torts: how to fully compensate an injury caused by the act of a single tortfeasor.") As a result, a release given to an agent will generally preclude a subsequent action against the agent's vicariously liable principal. As this Court noted in *Mamalis:*

> The rules of vicarious liability respond to a specific need in the law of torts: how to fully compensate an injury caused by the act of a single tortfeasor. Upon a showing of agency, **vicarious liability increases the likelihood that an injury will be compensated, by providing two funds from which a plaintiff may recover.** If the ultimately responsible agent is unavailable or lacks the ability to pay, the innocent victim has recourse against the principal. **If the agent is available or has means to pay, invocation of the doctrine is unnecessary because the injured party has a fund from which to recover.**

560 A.2d at 1383 (emphasis added).

The facts of this case demonstrate that Max C. Maloney, Individually and as Administrator of the Estate of Linda E. Maloney, attempted to draft a release such that claims against Maurice Prendergast, M.D. were carved out and reserved. Notwithstanding this attempt, the language of the release, interpreted pursuant to principles of Pennsylvania law, did not preserve those claims. To the contrary, the release in fact discharged all claims asserted by Mr. Maloney against Dr. Prendergast, Valley Medical Facilities, Inc., d/b/a The Medical Center ("Valley"), Beaver Heritage Valley Health System, Inc. ("Heritage"), Beaver Internal Medicine Association ("BIMA"), Tri–State Medical Group, Inc. ("Tri–State"), Brighton Radiology Associates, P.C. ("Brighton"), and Richard E. Brennan, M.D. ("Dr.Brennan") (collectively referred to as the "Health Care Providers").[3]

---

**3.** Valley, Heritage, BIMA, Tri–State and Brighton are collectively referred to as the "Hospitals." Valley, Heritage, BIMA, and Tri–State are collectively referred to as the "Beaver Hospitals."

As this case demonstrates, there can be significant tension between, on one hand, interpreting a release as the parties intended and, on the other hand, applying Pennsylvania's law on vicarious liability as it would otherwise govern the parties' relationship. Other Pennsylvania courts have faced this tension. *See, e.g., Tindall v. Friedman,* 970 A.2d 1159, 1179 (Pa.Super.2009) (noting in concurring/dissenting opinion that "as a matter of law, plaintiffs and agents/health care providers cannot unilaterally contract around the protections provided principals under *Mamalis.*") (Shogan, J.).

Here, the majority favors the parties' intentions rather than adopting what it characterizes as an "inflexible common-law rule."[4] Maj. Op. at 411, 984 A.2d at 486. Such a finding seems especially inapt here where the parties to the release were represented by attorneys who should have been well aware of the implications of releasing the Hospitals and the resultant discharge of Dr. Prendergast. The majority posits that, at the time the release was drafted, Pennsylvania law was not settled on the issue of whether the release of a principal discharged the agent.[5] Maj. Op. at 413–14, 984 A.2d

4. The majority also states that "[w]ooden enforcement of the idea that vicarious liability cannot result in a division of any kind for any purposes and under any circumstances, even pursuant to a voluntary agreement of the parties, would mean that judicial approval could never be lent to a three-way settlement between a plaintiff, an agent-defendant, and his employer relative a claim entailing vicarious liability, where both defendants contribute directly to the settlement." Maj. Op. at 417 n. 16, 984 A.2d at 489 n. 16. Respectfully, those facts are not presented in the instant case. Here, Dr. Prendergast was not a party to the settlement. If, as the majority aptly observes, the holding of a decision should be read against its facts, then clearly this Court's decision in the instant case will not apply to a factual scenario where both the agent and principal settle. Moreover, once the plaintiff has agreed to settle with both liable tortfeasors, and both tortfeasors have executed a settlement agreement, there would be nothing left to reserve. The complications arising from a reservation of rights would not occur in a case where both liable defendants agree to settle. As is noted in the Restatement (Third) of Torts, Apportionment of Liability (the "Restatement"), "[w]hen a settlement is reached between the plaintiff and all potentially liable tortfeasors, there will normally be no occasion for further judicial proceedings." RESTATEMENT (THIRD) OF TORTS § 24 cmt. a.

5. The majority correctly notes that the facts here are not analogous to those in *Mamalis.* In *Mamalis,* the parties agreed to release the agent and this Court held that the release discharged the principal. Here,

at 487. I cannot agree. Although the *Mamalis* decision was not directly controlling because it involved the release of an agent, the Superior Court's decision in *Pallante* involved the release of a principal and was the prevailing case law at the time the release was drafted.

The majority also argues that various passages of *Mamalis* are "directed expressly to the agent release scenario." Maj. Op. at 415, 984 A.2d at 488. Respectfully, the language of the *Mamalis* opinion has been applied broadly by the lower courts since the *Mamalis* decision was issued twenty years ago. For example, in *Pallante,* the Superior Court extended the rules of discharge set forth in *Mamalis* to a case where the injured party released the principal and then sought recovery from an agent:

> The central legal question is whether the holding of *Mamalis* is applicable to the circumstance where the injured party releases the principal rather than the agent. **Given the supreme court's decision that principal and agent are not joint tortfeasors, we conclude that the release of the principal acts as a release of the agent.**

*Pallante,* 629 A.2d at 149 (emphasis added). For the past sixteen years, Pennsylvania courts have enforced the *Pallante* holding that the rule set forth in *Mamalis* applies equally in the context of the release of a principal and the resulting discharge of the agent. *See Willard v. Interpool, Ltd.,* 758 A.2d 684, 688–89 (Pa.Super.2000) (citing *Mamalis* and *Pallante* and holding that the release of a vicariously liable principal *via* settlement discharged the agent). In my view, it cannot now be argued that *Mamalis* should be read against its facts and that the *Mamalis* decision is narrowly limited. Perhaps that was the Court's intention when *Mamalis* was decided, but the proverbial cat has been out of the bag for two decades since that time.[6] The Superior Court's decision in

Mr. Maloney attempted to release the principal Hospitals while preserving claims against agent Dr. Prendergast.

6. This Court has had the prior opportunity to limit the application of the *Mamalis* decision and has not done so. For example, in *Milton S. Hershey Med. Center,* this Court broadly reiterated the concept that

*Pallante* does not estop or otherwise prevent this Court from now adopting a contrary rule, but it would not be correct to state that Pennsylvania law had been unsettled regarding the release of a principal and the resulting discharge of the agent.[7]

The majority attempts to distinguish joint and several liability on one hand and vicarious liability on the other. Maj. Op. at 413–16, 984 A.2d at 487–89. The majority also argues that the Pennsylvania Legislature has "shifted the tide away from the common-law rule" through the passage of the Uniform Contribution Among Tortfeasors Act (the "UCATA"). Maj. Op. at 419, fn. 18, 984 A.2d at 490, fn. 18. The UCATA does not apply here because this case involves vicarious liability, not joint tortfeasors. Although *Mamalis* is based on an older common law principle of vicarious liability, that principle is hardly a legal anachronism. The Restatement, an authority cited by the majority, states that a release of either an agent or a vicariously liable principal acts to release both, because

vicarious liability is a means by which an injured party has two sources of potential compensation for a single injury. 821 A.2d at 1212–13. In that case, the injured party asserted medical malpractice claims based on vicarious liability and agreed to settle with both the principal hospital and agent physician. *Id.* at 1206–07. Although the insurance coverage for the agent physician was sufficient to pay the settlement, the physician's carrier balked at financing the entire settlement and demanded that partial coverage be provided by the hospital's carrier. *Id.* In holding that the agent's carrier should wholly finance the settlement, this Court reinforced the application of *Mamalis* and declined to expressly provide an exception to the doctrine of vicarious liability. The majority correctly notes that the *Milton S. Hershey Med. Center* case did not involve a reservation of rights. I reference the case only to note that the Court did not utilize the case as an opportunity to limit the application of the *Mamalis* decision.

7. I do not deny that the holding of a decision must be read against its facts. Maj. Op. at 417–19, 984 A.2d at 490–91. I simply point out that this proposition cannot be used to ignore controlling case law that developed in the lower courts following *Mamalis*. Similarly, I do not advocate a "cat-out-of-the-bag" estoppel doctrine that limits this Court's review. Maj. Op. at 417, 984 A.2d at 490. I merely note that this Court should not ignore the existence of *Pallante,* which was the controlling law on the release of a vicariously liable principal and discharge of the agent prior to the issuance of this decision in the instant case. I would acknowledge that *Pallante* stated the controlling rule and that this Court has now stated a contrary rule as a result of the public policy considerations discussed herein and in the majority opin-

only one measure of responsibility is assigned to both.[8] RE-STATEMENT (THIRD) OF TORTS § 16 rep. note cmt. d. As is clarified in the reporter's note to Comment d of Section 16 of the Restatement:

> **Release of both the agent and the vicariously liable party upon a settlement with one of those parties is logically required** by this Section and the provision of § 7, Comment j. Only one measure of responsibility will be assigned to all such parties. The nonsettling defendants will receive a credit for the share of responsibility that the factfinder assigns to the agent and vicariously liable party. Thus, there is no responsibility remaining to be assigned to any nonsettling agent or vicariously liable party. This effect is demonstrated in Illustration 2, in which the plaintiff settled with the primarily liable manufacturer. The nonsettling vicariously liable retailer would receive a credit against the judgment that would reflect the responsibility assigned to the manufacturer and retailer as a single entity. With that credit, there would be nothing left of the judgment for the retailer to pay.

*Id.* The passage of the UCATA, which applies only in the case of joint tortfeasers, did not modify this general principle.

The majority distinguishes *Pallante* based on the fact that the release of the principal in *Pallante* did not contain an express reservation of rights preserving the injured party's right to sue the agent. Maj. Op. at 407, 984 A.2d at 483. Although the majority's observation is correct regarding the

ion. Contrary to the majority's contention, there is no facial discordance in my position. Maj. Op. at 417–19, 984 A.2d at 490–91.

8. The majority notes that comments f and g to Section 24 of the Restatement urge that a release be interpreted pursuant to contract law. Maj. Op. at 416, 984 A.2d at 489. Respectfully, Section 24 of the Restatement refers generally to settlement agreements. In contrast, Section 16, which I reference, states the more specific rule applicable in the case of a partial release. The facts of the instant case involve a partial release of the agent. Notwithstanding the general rule set forth in Section 24 of the Restatement, the specific Rule in Section 16 relating to the release of an agent and the discharge of the principal applies in this case. Although the comparison of Restatement sections does not involve true statutory construction, it is not unreasonable to conclude, as is the rule in statutory construction, that a specific section ought to apply in lieu of a more general section. *See* 1 Pa.C.S. § 1933 (in statutory construction, where there is a conflict, specific provisions prevail over general provisions); *LaFarge Corp. v. Ins. Dep't*, 557 Pa. 544, 735 A.2d 74, 76 (1999) (citing 1 Pa.C.S. § 1933).

facts of the case as reported in the *Pallante* opinion, the reasoning of the *Pallante* court reveals why this distinction is not relevant.[9] In *Pallante*, the Superior Court broadly held that, due to the nature of vicarious liability, the release of the principal wholly satisfies the injured party, discharging the agent:

> Because the law seeks to protect an injured party's right to payment for a single injurious act from either a vicariously liable principal or an independently liable agent, the party's decision to settle with and release one acts as a release of the other, given their non-joint tortfeasor status. **We hold that where a principal who is vicariously liable for the negligent act of its agent is released by the injured party after settlement of the claim, the release is a release of the agent as well and no suit may be maintained against the agent** for its independent act of negligence.

*Pallante*, 629 A.2d at 150 (emphasis added). Based on this reasoning, which flows from this Court's opinion in *Mamalis*, any reservation of rights would be ineffective. Because there is only one injury, satisfied completely by settlement with the vicariously liable principal, there are no rights left to reserve.

In rejecting the general rules of vicarious liability, the majority relies heavily upon the assertion that *Mamalis* is inapplicable or distinguishable because that case involved a single tort and the instant case involves "multiple separate acts of negligence and multiple tortfeasors." Maj. Op. at 407, 984 A.2d at 483. The majority concludes that the *Mamalis* court "simply did not consider the extension of the rule to complex factual scenarios such as the present one." Maj. Op. at 411, 984 A.2d at 485. The majority repeatedly admonishes that the *Mamalis* decision must be "read against its facts" and that portions of the *Mamalis* decision were "directed express-

9. Although the *Pallante* opinion did not describe the terms of the release involved in that case, logic would suggest that the injured party did not intend the release of the principal to release the agent. The injured party sued both the agent and principal and then attempted to continue her case against the agent after releasing the principal. *See Pallante*, 629 A.2d at 147. This would suggest that the injured party did intend, in some way, to reserve her rights against the agent.

ly to the agent-release scenario." Maj. Op. at 415, 984 A.2d at 488.

The reasoning in *Mamalis,* as discussed herein, has less to do with the facts of that case and more to do with the reality of vicarious liability and the ways it differs from joint liability. In its reasoning the majority conflates joint liability on the one hand and vicarious liability on the other. The fact that there may have been multiple acts of negligence by Dr. Prendergast for which the Hospitals are vicariously liable is of no moment. Each time Dr. Prendergast is released for an act, the rules of vicarious liability direct that the Hospitals also be released for that act. The reverse is also true. If the Hospitals settle and are released, then Dr. Prendergast is similarly discharged in equal part to the release of his principals.

The number of negligent acts is wholly irrelevant. The rules of vicarious liability direct that the agent is released to the extent of the principal, no more and no less. If Dr. Prendergast is released for the first three acts of negligence he allegedly committed, then the Hospitals would similarly be discharged for any liability for those three acts. If Mr. Maloney and the Hospitals agree to a settlement for three acts of negligence, then those three acts are fully compensated and no recovery ought to be available from Dr. Prendergast. The existence of other acts of negligence is irrelevant. If the vicariously liable principal Hospitals settled with Mr. Maloney for those three acts, then Dr. Prendergast is released for those three acts because the wrongful acts have been fully compensated. Whether there is one negligent act or many, what matters is not the number of acts but whether the Hospitals are liable as a joint tortfeasors or as vicariously liable principals. Here, the Hospitals, as vicariously liable principals, were broadly released for any and all liability, so Dr. Prendergast was discharged in equal part. The majority's holding to the contrary conflates vicarious liability with joint liability.

Moreover, even if the existence of multiple acts of negligence was significant, the release here was not tailored to reflect that only some wrongful acts were released. Mr. Maloney's argument, adopted by the majority in its opinion,

might have merit if the release was narrowly tailored so as to apply only to claims arising from specific acts of malpractice. The release was not so tailored. The language of the release was drafted so broadly that it discharges all claims, including those asserted against Dr. Prendergast. The release clearly states that Dr. Brennan, Brighton, Valley, Beaver, Heritage, Tri–State, and the Medical Care Availability and Reduction of Error Fund (the "MCARE Fund") were released "**from any or all causes of action ... arising from, or in any way connected with all** medical, professional health *services* rendered by the above named Health Care Providers." Release, ¶ 1 (emphasis added). If Mr. Maloney wanted to preserve claims against Dr. Prendergast, this language should have been drafted more narrowly.[10]

Here, as in *Mamalis*, for each negligent act there is one injury and one measure of damage for which multiple parties may be held liable. Mr. Maloney has asserted claims based on direct liability against Dr. Prendergast and Dr. Brennan, claims based on vicarious liability against the Hospitals and the Beaver Hospitals, and claims based on direct liability

10. For example, rather then refer to "any or all causes of action ... arising from, or in any way connected with all medical, professional health services," the release could have referenced "all claims arising from the services provided by Dr. Brennan and all negligence committed directly and solely by Brighton, Valley, Beaver, Heritage, and Tri–State." This narrower language would have effectuated Mr. Maloney's intent to release certain defendants while allowing the matter to proceed against Dr. Prendergast (and against Dr. Prendergast's principals insofar as these principals were vicariously liable). Or, in the alternative, Mr. Maloney could have chosen not to settle and release the Hospitals, but rather to execute what is known as a "covenant not to sue" in exchange for a lump sum payment. Such a covenant would not release the Hospitals, but it would limit any additional damages they might be obligated to pay if an award was entered at trial. Then Mr. Maloney could have proceeded to trial against Dr. Prendergast (and the Hospitals, albeit in a limited capacity given that they had already agreed to a set measure of damages regardless of the verdict). As yet another alternative, Mr. Maloney could have initiated suit only against Dr. Prendergast and against the Hospitals based on direct liability. Had Mr. Maloney avoided alleging vicarious liability claims against the Hospitals, Mr. Maloney could have settled with the Hospitals for any direct liability claims while still preserving the direct liability claim against Dr. Prendergast.

against the Hospitals and the Beaver Hospitals. Therefore pursuant to *Mamalis,* Dr. Prendergast and his employers, the Hospitals, are vicariously liable for any malpractice by Dr. Prendergast. These parties stand in each other's shoes and together are liable for the wrongdoing. There is a single measure of damages assigned to these parties. Pursuant to the release, the Hospitals have paid for the single measure of damages.

The majority ultimately concludes that an exception to the general rules of vicarious liability must be created because otherwise there is "substantial likelihood" that settlements will be impeded, "undermining the strong public policy favoring the voluntary compromise of claims." Maj. Op. at 412, 984 A.2d at 486. In this respect, I concur with the majority. There is significant value in encouraging settlement in medical malpractice litigation. This is especially true where there is a solvent payment fund, such as the MCARE Fund, available to pay reasonable settlements. For this reason, I would join the majority's decision to depart from the general rules of vicarious liability and adopt a new exception in the limited context of cases like the instant one, where the parties to a medical malpractice lawsuit draft a clear, express reservation of rights against one physician while releasing the vicariously liable employer Hospitals. I would decline, however, to extend the exception generally to other circumstances and I would acknowledge that the adoption of this exception is a new court-made rule contrary to the general principles of vicarious liability.