# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Crosby Valve, LLC, ITT Corporation, : 
and The Procter and Gamble : 
Company, : 
                Petitioners : 
                              : 
            v. :   No. 78 C.D. 2015 
                              :   Argued: October 6, 2015 
Department of Insurance, : 
                Respondent : 


BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE LEADBETTER                     FILED: January 14, 2016


      Petitioners, Crosby Valve, LLC, ITT Corporation, and The Procter and Gamble Company,[1] petition for review of two orders of the Insurance Commissioner. The first order denied Petitioners' petitions to intervene at the agency level. The second order approved the acquisition of OneBeacon Insurance Company, OneBeacon America Insurance Company, Potomac Insurance Company and Employers Fire Insurance Company (Runoff Subsidiaries) by Armour Group Holdings Limited, through its subsidiary Trebuchet US Holdings, Inc. (Armour).[2]

---

[1] By order dated December 2, 2015, the above-captioned matter was discontinued solely as to The Procter & Gamble Company.

[2] By order dated March 26, 2015, Judge Leadbetter directed the parties to submit briefs addressing only the denial of the petitions to intervene. The Court stayed briefing and argument on the merits appeal pending disposition of the intervention appeal.

Petitioners purchased general liability insurance policies from the predecessors of the Runoff Subsidiaries covering claims and liabilities for bodily injury and property damage (the OneBeacon Policies). Petitioners have sought coverage under the OneBeacon Policies for underlying asbestos, environmental and other third-party liability claims, which continue to be asserted against Petitioners.

On February 7, 2013, Armour filed an application to acquire OneBeacon Insurance Company and Potomac Insurance Company with the Department of Insurance under the Insurance Holding Company Act (IHCA), Article XIV of the Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, *as amended*, 40 P.S. §§ 991.1401-991.1413, by submitting what is commonly called a "Form A" application. The Department published notice of this proposed transaction in the *Pennsylvania Bulletin* on February 13, 2013. The Form A application was subsequently amended to include two subsidiaries of OneBeacon Insurance Company, OneBeacon America Insurance Company and Employers Fire Insurance Company, after they were re-domesticated from the Commonwealth of Massachusetts to Pennsylvania.

On April 23, 2013, Petitioners filed applications to intervene in the proceeding before the Department, on the basis that they were policyholders of the Runoff Subsidiaries whose rights to access the OneBeacon Policies and to obtain coverage for asbestos and environmental exposures would be impaired if the proposed transaction was approved. Petitioners averred that the purpose and effect of the proposed transaction was to allow the Runoff Subsidiaries' parent company, OneBeacon Insurance Group Ltd. (OneBeacon), to shed asbestos, environmental and other legacy liabilities and that the Runoff Subsidiaries were grossly under-

2

reserved for legacy asbestos and environmental exposures because OneBeacon had stripped capital out of the Runoff Subsidiaries before announcing the proposed transaction. Petitioners further alleged that the proposed transaction would prejudice them and other policyholders by transferring control of the now-depleted Runoff Subsidiaries from OneBeacon, a large, well-capitalized parent company with ongoing, profitable underwriting operations, to Armour, a poorly capitalized arbitrageur of runoff businesses that would be unable to raise any capital in the likely event that the Runoff Subsidiaries' reserves and reinsurance assets proved insufficient to satisfy their asbestos, environmental and other legacy liabilities under OneBeacon Policies.

Petitioners asserted that they wished to intervene to oppose the proposed transaction and to obtain access to information Armour and OneBeacon had designated as confidential, which the Department had refused to release. Petitioners sought access to analyses of the financial condition of the Runoff Subsidiaries and Armour, modeling performed by actuaries retained by OneBeacon to assess the adequacy of its reserves for asbestos and environmental claims, and projections of whether, under various unexplained assumptions, the Runoff Subsidiaries would have sufficient assets to pay legacy claims or would require additional capital infusions in the future. The Department provided access to summary versions of these reports to the public.

On July 23, 2014, while the petitions to intervene were still pending, the Department held a public informational hearing, at which Armour and OneBeacon made presentations and Petitioners and others were permitted to comment. Experts retained by Petitioners and other policyholders seeking to intervene testified at the hearing that the proposed transaction served no legitimate

3

business purpose, was an improper attempt by OneBeacon to dump legacy liability exposures under hundreds of outstanding policies, and would leave the Runoff Subsidiaries in a weakened financial condition that inevitably would culminate in their insolvency. In follow-up written submissions to the Department, Petitioners' experts stated that while the proposed transaction should not be approved, any approval order should be accompanied by various conditions, including a direct capital infusion of $520 million by OneBeacon or the purchase of $1.6 billion in additional retroactive reinsurance for the Runoff Subsidiaries.

On December 23, 2014, the Insurance Commissioner denied Petitioners' motion to intervene. In a separate order, the Insurance Commissioner granted the Form A application and approved the proposed transaction. Petitioners filed a petition for review, asserting that the Department's legal conclusions were not in accordance with law, and its factual findings were not supported by substantial evidence. Additionally, they assert that the Department's denial of the motion to intervene was an abuse of discretion and contrary to law because it disregarded Petitioners' due process rights, the Administrative Agency Law (AAL), 2 Pa. C.S. §§ 101, 501-508, and 701-704, and its own regulations.

Petitioners also challenge the Department's decision to withhold from them a large volume of financial data and actuarial analyses of the adequacy of the Runoff Subsidiaries' reserves and surplus. Petitioners assert that by depriving them of a meaningful opportunity to participate in the administrative proceeding and relying on documents and analyses that were not disclosed to Petitioners and never made part of the administrative record, the Department violated their right to due process in a matter that directly impacted their interests. Petitioners request that this Court vacate the Commissioner's decisions denying their petitions to

4

intervene and approving the transaction and remand for further proceedings consistent with the requirements of due process and the AAL.

Pursuant to Pennsylvania Rules of Appellate Procedure 123, 1541, and 1951, Pa. R.A.P. 123, 1541 and 1951, Petitioners filed with this Court an application to strike certified list of the record. The Department's certified list of the record is split into two parts. The first part lists and describes 149 documents upon which it relied. The second part lists 29 documents as "confidential – for court review in camera."[3] Petitioners assert that this action violates due process and request that this Court strike the certified list and require the Department to file a new certified list that includes all the documents it relied upon. In the alternative, Petitioners request that this Court vacate the Commissioner's order approving Armour's acquisition of the Runoff Subsidiaries and remand to the Department with directions to reconsider the decision based solely on the non-confidential documents made available to the public. Petitioners also assert that the Department violated their right to due process by denying them access to certain documents submitted by OneBeacon and Armour on the basis that the documents contained confidential information.

---

[3] In the certified list of record, the Department states:

> Certain documents submitted to the Department are highly confidential, and the Department has kept them entirely private. The appellants were not parties to the proceedings…and are challenging their non-party status before this Court. Accordingly, the documents on the Confidential List are maintained as CONFIDENTIAL. Because they were relied on by the Department in reaching its decision, they will be made available to the Court for in camera review upon request. They will not be quoted in publicly filed briefing or at oral argument.

5

Petitioners argue that the denial of their request to intervene was contrary to the law and an abuse of discretion. Petitioners contend that they are eligible to intervene under Section 35.28(a)(2), (a)(3) of the General Rules of Administrative Practice and Procedure (GRAPP) as customers of the applicant and because it would be in the public's interest.[4] 1 Pa. Code § 35.28(a)(2), (a)(3). Petitioners further assert that they have a direct pecuniary interest in the outcome of the proposed transaction, an interest of the sort expressly recognized by Section 1402(f)(1) of the IHCA, 40 P.S. § 991.1402(f)(1). Specifically, Petitioners collectively purchased billions of dollars' worth of general liability insurance policies covering long-tail asbestos and environmental contamination claims from OneBeacon's predecessors. Further, Petitioners' participation in the proceeding would be in the public interest, because it would assist rather than impede the Department's decision-making process.

Second, Petitioners assert that the Department violated their right to due process by denying them access to documents submitted to the Department by OneBeacon and Armour as "confidential." Petitioners seek access to (1) data and

---

[4] Section 35.28(a)(2), (a)(3) provides, in relevant part
    (a) *Persons.* A petition to intervene may be filed by a person claiming a right to intervene or an interest of such nature that intervention is necessary or appropriate to the administration of the statute under which the proceeding is brought. The right or interest may be one of the following:
       \*\*\*
    (2) An interest which may be directly affected and which is not adequately represented by existing parties, and as to which petitioners may be bound by the action of the agency in the proceeding. The following may have an interest: consumers, customers or other patrons served by the applicant….
    (3) Other interest of such nature that participation of the petitioner may be in the public interest.

analyses about the financial condition and assets of the Runoff Subsidiaries and Armour, (2) modeling, including non-public assumptions, performed by Towers Watson to determine whether the Runoff Subsidiaries would have sufficient assets to pay legacy claims, and (3) commentary on Towers Watson's report by the Department's independent expert, Risk & Regulatory Consulting. Petitioners argue that they need full access to these documents to accurately assess the transaction to ensure that the Runoff Subsidiaries will have sufficient capital.

Third, Petitioners argue that the Department's certified list of record, which designates certain documents as confidential and available for in camera review only, violates the Pennsylvania Rules of Appellate Procedure. Meaningful appellate review requires the inclusion of all materials upon which the agency relied in making the determination under review.

The question before this Court is what level of due process is owed to non-parties to a transaction under review by the Department. Petitioners argue that they have standing to intervene under the GRAPP and that due process requires that the Department conduct a full hearing consistent with the AAL. The Department asserts that the GRAPP is not applicable to its review of the transaction and that it is required only to follow the procedures set forth in Section 1402 of the IHCA.

The GRAPP govern the practice and procedure before agencies of the Commonwealth under the AAL. 1 Pa. Code § 31.1(a). The GRAPP are not applicable to a proceeding before an agency to the extent that the applicable statute governing or authorizing the proceeding sets forth inconsistent rules on the same subject. 1 Pa. Code § 31.1(b).

7

The proposed acquisition by Armour is governed by the IHCA. Section 1402(a)(1) of the IHCA, 40 P.S. § 991.1402(a)(1), requires insurers to file a Form A application with the Department whenever an acquisition is proposed. *See* 31 Pa. Code Part I, Subpt B, Ch 25, Appendix A. Section 1402(b) of the IHCA, 40 P.S. § 991.1402(b), lays out the information the insurers must provide to the Department. Section 1402(f)(1) lists the bases upon which the Department could deny approval of the proposed acquisition.[5] Section 1402(f)(2), 40 P.S. § 991.1402(f)(2), states that the Department is required to hold a hearing regarding

---

[5] Petitioners rely upon Section 1402(f)(1)(i)(iii), (iv), (v) and (vi), which provide:

   (f)(1) The department shall approve any merger, consolidation or other acquisition of control referred to in subsection (a) unless it finds any of the following:

   (i) After the merger, consolidation or other acquisition of control, the domestic insurer referred to in subsection (a) would not be able to satisfy the requirements for the issuance of a license to write the line or lines of insurance for which it is presently licensed.
   ***

   (iii) The financial condition of any acquiring party is such as might jeopardize the financial stability of the insurer or prejudice the interest of its policyholders.

   (iv) The plans or proposals which the acquiring party has to liquidate the insurer, sell its assets or consolidate or merge it with any person, or to make any other material change in its business or corporate structure or management, are unfair and unreasonable and fail to confer benefit on policyholders of the insurer and are not in the public interest.

   (v) The competence, experience and integrity of those persons who would control the operation of the insurer are such that it would not be in the interest of policyholders of the insurer and of the public to permit the merger, consolidation or other acquisition of control.

   (vi) The merger, consolidation or other acquisition of control is likely to be hazardous or prejudicial to the insurance buying public.

8

the proposed acquisition if the acquirer or the target insurer requests such a hearing within 10 days of the filing of the Form A application. If no such request is received, it is within the Department's discretion whether to hold such a hearing. *Id*. If the Department holds a hearing, the Department must provide notice to the insurers and to "such other persons, if any, as the department may determine." *Id*. If the Commissioner approves the proposed transaction (approving determination), the Department must provide notice to the acquirer and the target firm and the transaction may proceed in the manner described in the Form A application subject to any conditions imposed by the Department. *Id*. If the Commissioner does not issue an approving determination, the Department must then provide notice of this action to the acquirer and the target firm. *Id*. The IHCA does not mandate any other procedures and does not provide for appellate review of the transaction.

In *LaFarge Corporation v. Pennsylvania Insurance Department*, 690 A.2d 826 (Pa. Cmwlth. 1997) (*LaFarge I*), reversed by *LaFarge Corporation v. Insurance Department*, 735 A.2d 74 (Pa. 1999) (*LaFarge II*), an en banc panel of this Court considered whether the Department was required to conduct a hearing in compliance with the AAL, when reviewing an application to restructure and divide an insurance company. In 1995, CIGNA Insurance Company and its subsidiary INA Financial decided to allocate previously written policies dealing with asbestos and environmental liabilities to a separate operating entity known as Century Indemnity Company. The policyholders having asbestos and environmental liability policies would look only to Century Indemnity for coverage, and INA Financial would not be liable for any excess amount of liability exceeding the $500 million capital infusion and $800 million reinsurance coverage that it provided to Century Indemnity. As a result of the plan for restructure and division, CIGNA

9

would be able to cap its exposure for asbestos and environmental liability at the amount of capital and reinsurance that it provided to Century Indemnity.

INA submitted actuarial reports analyzing the plan of restructure and CIGNA's asbestos and environmental liability reserves, a fairness opinion, a solvency opinion, a reinsurance recoverable analysis, pro forma balance sheets, a Tillinghast Towers-Perrin reserve review report, and a reconciliation of reserve activity and a model for testing the sufficiency of the assets to pay the asbestos and environmental liabilities of Century Indemnity, as well as information regarding CIGNA's asbestos and environmental exposures. The Department engaged Deloitte & Touche to assist in the examination of CIGNA and Tillinghast Towers-Perrin to perform a review of CIGNA's reserves.

The Department published a notice of the plan of restructure in the *Pennsylvania Bulletin*, inviting comments from the public regarding the plan and a notice of public hearing, requesting written comments. Policyholders and reinsurers filed objections to the plan. The policyholders and reinsurers were granted fifteen minutes to make their oral presentation at the public hearing and the Department granted limited intervention to the policyholders and reinsurers solely for the purpose of submitting written comments and making oral presentations. Although granted limited intervention, the policyholders and reinsurers were not permitted to cross-examine INA's witnesses. The Department held three public hearings and thereafter allowed CIGNA, the policyholders and reinsurers to submit additional written comments. Pursuant to the IHCA, the Business Corporation Law of 1988 (commonly known as the General Association Act of 1998 (GAA)), Act of December 21, 1988, P.L. 1444, 15 P.S. §§ 20101-20304, and the General Association Act Amendments Act of 1990, (GAAAA), Act of December 19, 1990,

10

P.L. 864, 15 P.S. §§ 21101-21404, the Commissioner approved INA's plan for restructure and division with conditions imposed thereon. *See* Exhibit K to Petitioners' Brief, January 7, 1996 Order of Linda S. Kaiser, Insurance Commissioner.[6]

The policyholders and reinsurers filed an appeal with this Court arguing that the procedures the Department employed in allowing the restructuring and division of INA violated their statutory and constitutional due process rights and that because their interests were so substantial they were entitled to a due process hearing under the AAL that would allow them to cross-examine INA's witnesses and present their own witnesses as to the advisability of the division and restructuring.

This Court first looked to Section 207(c) of the GAAAA, 15 P.S. § 21207(c), which provides that the Department shall afford reasonable notice and a public opportunity to be heard, and the Department may make such inquiries, audits and investigations and require submission of supplemental studies and information that it deems necessary. The Court concluded that Section 207(c) requires the Department to hold a public hearing only, without the production of a formal record, including a trial-type due process hearing. The Court then noted that Section 207(d) provides that the Department's decision shall be "subject to judicial review in the manner and within the time provided or prescribed by law." 15 P.S. § 21207(d). The Court determined that there was a conflict between Section 207(c)'s requirement for a public hearing only and Section 207(d)'s

---

[6] It is unclear why the GAAAA was the only statute at issue before Commonwealth Court and the Supreme Court when the IHCA also served as a basis for approval of the plan of division and restructure.

11

requirement for judicial review. *LaFarge I*, 690 A.2d at 833. The Court posited that if the Department had denied INA's application that decision would have constituted an adjudication and INA as an aggrieved party would be entitled to seek review. *Id*. The Court concluded that "the General Assembly intended to interpose the procedures of the AAL between the determination after the informational hearing and judicial review." *Id*. The Court reasoned that the only law that provides for the manner in which a court is to conduct judicial review of an administrative agency decision is the AAL, and the only means by which a court can conduct that review is upon a full and complete record of the proceedings before the agency. Accordingly, the requirement in Section 207(d) of the GAAAA for judicial review "in a manner prescribed by law" necessarily makes the AAL applicable. *Id.* at 833-34. The Court vacated the Department's approval of the transaction, and remanded with orders to the Department to conduct a hearing compliant with the AAL.[7]

The Court went on to consider whether the Department's decision was an adjudication as to the policyholders. The Court noted that Section 205(b) of the GAAAA, 15 P.S. § 21205(b), specifies that the Department's approval of a transfer of assets or division of an insurance company "shall be approved if it is in accordance with law and not injurious to the interests of the policyholders and

---

[7] The Court stated that the GAAAA requires the Department to make an initial determination regarding division and restructuring. 690 A.2d at 834. The Court suggested that the Department collect information and make a determination at the deputy commissioner level. *Id*. Under the GAAAA the Department could hold a hearing if it wished. *Id.* at 835. The Department's decision could then be appealed to the Insurance Commissioner and a full AAL due process hearing could be held and all parties would have the opportunity to create a full and complete record. *Id*. The Insurance Commissioner could then render a final decision upon the record, which could be appealed to the Commonwealth Court by an aggrieved person.

12

creditors." *Id.* at 837. The Court concluded that Section 205(b) creates an interest in the policyholders because they have specific interest in assuring that any restructure of an insurance company will result in the insurer's ability to fulfill its responsibilities under the policies. *Id.* The Court concluded that because the policyholders' interests were affected by the Department's approval of INA's plan for restructure and division, and because they intervened in the proceedings before the Department, they had standing to appeal the Department's order. *Id.* at 837-38.

The Department appealed to the Pennsylvania Supreme Court, which reversed this Court's decision. *LaFarge II*. The Supreme Court undertook to interpret the GAAAA to determine the type of hearing the Department must conduct when reviewing a plan for restructure and division of an insurance company. *LaFarge II*, 735 A.2d at 75. Specifically, whether the General Assembly when it enacted the GAAAA, making the GAA applicable to insurance companies, intended to incorporate the stringent procedural due process requirements of the more general AAL or whether the GAAAA was intended to create an entirely distinct procedure providing for less restrictive control over reorganization of insurance companies. *Id.*

The Supreme Court relied upon *Drain v. Covenant Life Insurance Company*, 712 A.2d 273 (Pa. 1998). In *Drain*, which involved post-merger litigation between insureds and insurance companies, the Supreme Court ruled that policyholders, creditors, and shareholders retain standing to pursue tort remedies arising out of the corporate transaction even when that transaction has been approved by the insurance department because Department approval does not insulate the insurer from liability. The Supreme Court found that policyholders, creditors, and shareholders did not suffer per se injury simply by operation of the

13

statute and judicial remedies were not foreclosed by the Department's approval of the plan. *LaFarge II*, 735 A.2d at 77. The Supreme Court also relied upon *Pennsylvania Coal Mining Association v. Insurance Department*, 370 A.2d 685 (Pa. 1977), which held that in a rate-making proceeding, the insurers must be given reasonable notice of the proposed rates, the opportunity to present written views on the rates and written objections. *LaFarge II*, 735 A.2d at 77 (citing *Pa. Coal Mining Assn.*, 370 A.2d at 693).

In overruling the Commonwealth Court, the Supreme Court held that the procedures followed by the Department were adequate to satisfy the requirements of due process. *Id*. at 78. The Supreme Court rejected imposition of additional procedures such as sworn testimony, cross-examination, a full stenographic record, and opportunity to submit briefs because such procedures would have entailed extensive delay, would not have materially enhanced the interests of policyholders and reinsurers, and would have required the Department to engage in evaluation of speculative future harm.[8]  *Id*. The Supreme Court concluded that:

> The issue before the department was a statistical and economic one, an area indisputably within the expertise of the department. The department solicited independent expert reports and evaluations concerning

---

[8] In *Philadelphia County Medical Society v. Kaiser*, 699 A.2d 800 (Pa. Cmwlth. 1997), another en banc panel of this Court ordered the Department to follow the procedure recommended by Judge Pellegrini in *LaFarge I* when it reviewed the transaction that created Highmark. On remand, the Insurance Commissioner permitted a non-insurer petitioner to intervene before the Department. Following the grant of intervention in *Philadelphia County Medical Society*, the Supreme Court overruled *LaFarge I*. *Philadelphia County Medical Society,* then known as *Capital BlueCross v. Pennsylvania Insurance Department*, 937 A.2d 552 (Pa. Cmwlth. 2007), was not reviewed again until eight years after the grant of intervention, and due process and intervention at the agency level were not a consideration.

14

> the solvency and financial integrity of the proposed restructuring, and the department also received the reports and evaluations prepared by the financial and actuarial experts of the objecting parties.

*Id.* The Supreme Court concluded that the Department properly analyzed the materials it had gathered and provided a comprehensive written decision stating why the transaction was not injurious to the interest of policyholders and creditor under Section 205(b) of the GAAAA. *Id.* at 78-79.

In *LaFarge II*, the Supreme Court examined the procedures set forth in Sections 205 and 207 of the GAAAA and rejected the interveners' contention that the Department's approval of a transaction under the GAAAA is an adjudication requiring a full AAL hearing and the intervention of non-parties to the transaction. The transaction in the case at hand is very similar to *LaFarge*. The duties imposed on the Department prior to issuance or denial of an approving determination under Section 1402 of the IHCA are even fewer than those imposed by Sections 205 and 207 of the GAAAA. Section 1402(f) of the IHCA charges the Department with determining whether the proposed transaction transgresses upon any of the seven listed bases for denial of approval. The IHCA does not mandate that the Department provide a public hearing, unless requested by the insurers, and does not require it to obtain any information beyond that which is submitted on the Form A application. The Department, **at its discretion**, may hold a public hearing and may retain any attorneys, actuaries, accountants and other experts it may feel necessary to assist in review the proposed transaction. Section 1402(f)(2) and (f)(3) of the IHCA, 40 P.S. § 991.1402(f)(2) and (f)(3). Nothing in the IHCA indicates that the General Assembly intended that review of a proposed transaction under this section would constitute an adjudication which could be subject to a full AAL hearing and intervention by non-parties to the transaction. If the General

Assembly intended for the AAL to apply to review of a proposed transaction under this section, it could have simply done so. Instead it provided the procedures set forth in Section 1402 of the IHCA.

Similar to the *LaFarge* transaction, this transaction required the Department to conduct a statistical and economic analysis well within its expertise. While the policyholders and reinsurers in *LaFarge* were granted limited intervention, the Petitioners in this case received the same type of notice and opportunity to be heard as the policyholders and reinsurers in *LaFarge*. Additionally, the Department allowed Petitioners to submit reports from their own experts, which did not occur in *LaFarge*. These actions fully complied with Section 1402 of the IHCA.

Review of a proposed transaction under the IHCA is intended to be a regulatory act, not subject to intervention or opposition of entities who are not parties to the transaction. The Department is the public's and policyholders' representative and charged with evaluating the risks and consequences of the transaction. The Court concludes that based on the Supreme Court's analysis in *LaFarge II*, the procedures followed by the Department satisfied the requirements of Section 1402 of the IHCA and that policyholders are not due any further process. Thus, denial of intervention was not error.

Having concluded that the Department was not required to conduct its review of the transaction in compliance with the AAL because Section 1402 of the IHCA sets forth procedures that are inconsistent with the rules and procedures of the AAL and the GRAPP, the Court need not reach an analysis under the AAL or the GRAPP. However, for the sake of thoroughness, the Court concludes that Petitioners do not satisfy the requirements for intervention under GRAPP.

16

The GRAPP define "Interveners" as:

> Persons intervening or petitioning to intervene as provided by §§ 35.27 -- 35.31, when admitted as a participant to a proceeding. Admission as an intervener may not be construed as recognition by the agency that the intervener has a direct interest in the proceeding or might be aggrieved by an order of the agency in the proceeding.

1 Pa. Code § 31.3. Sections 35.27-35.31 of the GRAPP, 1 Pa. Code §§ 35.27-35.31, provide the procedures and standards for intervention before an agency. Section 35.28(2) of the GRAPP, 1 Pa. Code § 35.28(2), provides that an entity may intervene when it has:

> An interest which may be directly affected *and* which is not adequately represented by existing parties, *and* as to which petitioners may be bound by the action of the agency in the proceeding. [Emphasis added.]

Petitioners assert that they possess a direct interest because at some future point the Runoff Subsidiaries under Armour's control may run out of money to pay the long-tail claims or may attempt to slow-pay claims because of alleged poor capitalization. These assertions are simply speculative and do not constitute a direct or immediate interest. Approval of the proposed transaction will not result in a per se injury to Petitioners.[9] The proposed transaction involves the property rights of OneBeacon and Armour's right to acquire property in a market transaction. Petitioners' contract rights are subsidiary to the rights of the parties to

---

[9] Even if the Runoff Subsidiaries are not acquired by Armour, there is no guarantee that they will not run out of money in the future or engage in slow-pay tactics.

the transaction. Petitioners' contract rights are not affected or diminished in any direct way by the proposed transaction. Petitioners also retain their right to any and all judicial remedies relating to the administration of their claims.

Further, Petitioners do not satisfy the requirements of Section 35.28(3) of the GRAPP, 1 Pa. Code § 35.28(3), which provides for intervention when a non-party "has some other interest of such nature that participation of the petitioner may be in the public interest." Petitioners assert that their experts, if given full access to all of the insurers' data and information, would be able to help the Department assess the proposed transaction. Both the Department and the insurers engaged experts to assess and analyze the proposed transaction. It is unclear how a third set of expert reports would be in the public interest.

Because Petitioners are not entitled to intervention, we hold that the Department properly denied access to the confidential documents. Section 1407(a) of the IHCA, 40 P.S. § 991.1407(a), provides for strict standards of confidentiality surrounding documents submitted to the Department. Section 1407(a) provides that:

> (a) All information, documents, materials and copies thereof in the possession or control of the department that are produced by, obtained by or disclosed to the department or any other person in the course of an examination or investigation made pursuant to section 1406 or investigation made pursuant to section 1406.1 or 1406.2 and all information reported pursuant to sections 1402(b)(11.1) and (11.2), 1404 and 1405 shall be privileged and given confidential treatment and shall not be:
> (1) Subject to discovery or admissible in evidence in a private civil action.
> (2) Subject to subpoena.

(3) Subject to the act of February 14, 2008 (P.L. 6, No. 3), known as the "Right-to-Know Law."

4) Made public by the department or any other person, except to regulatory or law enforcement officials of other jurisdictions or group supervisors or members of a supervisory college in accordance with subsection (c), without the prior written consent of the insurer to which it pertains unless the department, after giving the insurer and its affiliates who would be affected thereby notice and opportunity to be heard, determines that the interest of policyholders, shareholders or the public will be served by the publication thereof, in which event it may publish all or any part thereof in such manner as it may deem appropriate.

The Department may make confidential documents public at its discretion. In this case, the Department has declined to make the confidential documents public and, generally, such a discretionary decision is given much deference. *UGI Utils., Inc.-Gas Div. v. Pub. Util. Comm'n*, 878 A.2d 186 (Pa. Cmwlth. 2005).

Finally, Petitioners assert that the certified list of record filed by the Department is not in compliance with the Pennsylvania Rules of Appellate Procedure. Petitioners assert that the Department is improperly denying them access to the full appellate record comprising all of the evidence considered and relied upon by the Department in reaching its decision.

Pennsylvania Rule of Appellate Procedure 1952(b), Pa. R.A.P. 1952(b), governs the filing of the certificate of record and provides in relevant part:

(b) Certificate of record.--The government unit shall certify the contents of the record and a list of all documents, transcripts of testimony, exhibits and other material comprising the record…Instead of filing the record or designated parts thereof, the government unit may file a certified list of all documents, transcripts of testimony, exhibits and other material comprising the

19

record, or a certified list of such parts thereof as the parties may designate, adequately describing each, and the filing of the certified list shall constitute filing of the record…If a certified list is filed…the government unit shall retain the record or parts thereof. Upon request of the court or the request of a party, the record or any part thereof thus retained shall be transmitted to the court notwithstanding any prior stipulation. *All parts of the record retained by the government unit shall be a part of the record on review for all purposes.* [Emphasis added.]

The Department filed a certified list of record that contained descriptions of all documents in the record, including confidential documents. The confidential documents include the seller's disclosure schedules to the stock purchase agreement, a business plan, Towers Watson's presentations and reports, Risk & Regulatory Consulting's presentations and reports, and correspondence from Cozen O'Conner. The Department retained possession of the confidential documents and stated that the confidential documents would be made available to this Court for in camera review. Contrary to Petitioners' assertions, this procedure is in full compliance with the Rules of Appellate Procedure. The entirety of the record is available to the parties and this Court. Accordingly, the motion to strike is denied.

For all of the foregoing reasons, we affirm the Insurance Commissioner's denial of Petitioners' petitions to intervene. Having affirmed the Insurance Commissioner's denial of intervention, Petitioners' petition for review is dismissed as moot. Additionally, Petitioners' motion to strike the certified list of record is denied.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

20

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Crosby Valve, LLC, ITT Corporation, and The Procter and Gamble Company, : : : :

               Petitioners    :

                               :

               v.          :     No. 78 C.D. 2015

                               :

Department of Insurance,     :

               Respondent    :

# O R D E R

AND NOW, this 14th day of January, 2016, the order of the Insurance Commissioner, Michael F. Consedine, denying intervention is hereby AFFIRMED. Petitioners' motion to strike the certified list of record is DENIED. Petitioners' petition for review is DISMISSED as moot.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Crosby Valve, LLC, ITT Corporation, :
and The Procter and Gamble :
Company, :
                    Petitioners :
                     :
          v. : No. 78 C.D. 2015
                     : Argued: October 6, 2015
Department of Insurance, :
                Respondent :

BEFORE:  HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ANNE E. COVEY, Judge

**DISSENTING OPINION**
**BY JUDGE BROBSON**                **FILED:  January 14, 2016**


As the majority notes, Petitioners in this matter challenge two orders issued by the Pennsylvania Insurance Commissioner ("Commissioner"), both dated December 23, 2014.  The first denied Petitioners' motion to intervene (Intervention Order) in the Pennsylvania Insurance Department's (Department) consideration of the "Form A" filing of Armour Group Holdings Limited, through its subsidiary Trebuchet US Holdings, Inc. (Armour), by which Armour sought Department approval of its acquisition of certain Pennsylvania domestic insurance companies pursuant to Article XIV of the Insurance Company Law of 1921, commonly

referred to as the Insurance Holding Companies Act (IHCA).[1] The other order approved the acquisition (Approving Determination).[2]

The majority affirms the Intervention Order. I agree with the majority that under the Pennsylvania Supreme Court's decision in *LaFarge Corporation v. Commonwealth of Pennsylvania, Insurance Department*, 735 A.2d 74 (Pa. 1999) (*LaFarge II*), the procedures set forth in the IHCA govern the Department's review and consideration of Form A filings. The more stringent procedural requirements of the Administrative Agency Law (AAL), 2 Pa. C.S. §§ 101, 501-508, and 701-704, and, as a consequence, the General Rules of Administrative Practice and Procedure (GRAPP),[3] do not apply to the Department's consideration of Form A filings under the IHCA. Accordingly, Petitioners' motion to intervene cannot be considered a motion to intervene under GRAPP. At best, the motion was nothing more than an informal request by Petitioners to play a more active role in the Department's regulatory review of the Form A filing under the IHCA. Because, for reasons explained by the majority and in *LaFarge II*, Petitioners had no right to participate as a full party in the Form A filing process, the decision denying the motion to intervene cannot be considered an "adjudication" under the AAL over which this Court has appellate jurisdiction. *See Baker v. Pennsylvania Human Relations Comm'n*, 489 A.2d 1354, 1357-58 (Pa. 1985) (holding that agency action that is not adjudication is not appealable under AAL); *Mansfield v. State Civil*

---

[1] Act of May 17, 1921, P.L. 682, *as amended*, 40 P.S. §§ 991.1401-.1413.

[2] The IHCA expressly refers to decisions approving a Form A filing as an "approving determination." Section 1402(f)(2) of the IHCA, 40 P.S. § 991.1402(f)(2).

[3] 1 Pa. Code. Chs. 31-35. The Department has adopted portions of GRAPP, including the rules governing intervention. 31 Pa. Code § 56.1.

*Serv. Comm'n (Dep't Labor & Indus.)*, 68 A.3d 1062 (Pa. Cmwlth. 2013) (quashing appeal from agency determination that was not adjudication); 2 Pa. C.S. § 101 (definition of "adjudication").[4] Accordingly, unlike the majority, I would quash Petitioners' appeal of the Intervention Order for lack of jurisdiction.

As for the appeal from the Approving Determination, I would follow this Court's en banc decision in *Philadelphia County Medical Society v. Kaiser*, 699 A.2d 800 (Pa. Cmwlth. 1997) (en banc) (*PCMS*). Like this case, *PCMS* involved a direct appeal by opponents to an approving determination under the IHCA where no formal administrative proceeding preceded the Department's approving determination. This Court held that the direct appeal, under the circumstances, was "premature":

> Because, by definition, an agency action only results in an adjudication when there is a final order, only when those administrative appeals have been exhausted will the agency action become an adjudication subject to judicial review. Of course, if a party does not timely seek to have a hearing from an adverse agency adjudication, the adjudication becomes final and unappealable.
>
> Even though the agency action has a direct impact on the person's rights or privileges, and is final so as to fall within the definition of an "adjudication", the action is not "valid as to any party unless he shall have been

---

[4] An "adjudication" is defined as follows:

Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made.

2 Pa. C.S. § 101.

afforded reasonable notice of a hearing and an opportunity to be heard." 2 Pa. C.S. § 504. Until a hearing is held before the administrative agency and a record of that hearing made, Section 504 of the Administrative Agency Law provides that the adjudication is not valid or effective. The reason behind this requirement is that judicial review, absent a valid administrative adjudication or proper record, is a "premature interruption of the administrative process." Moreover, until a hearing, and, if necessary, the taking of evidence where facts are disputed, the issues cannot be properly clarified, whether there is a direct interest of the party taking the appeal and questions of fact sufficiently resolved to create a record upon which judicial review can be conducted.

*PCMS*, 699 A.2d at 806 (citations omitted) (footnotes omitted). Rather than dismiss the appeal for lack of jurisdiction, the Court transferred the matter to the Department with the following instructions:

[W]e will transfer this case back to the Department to consider whether Opponents' interests are sufficiently direct so as to be a "party" and, if so, conduct sufficient hearings to resolve any factual disputes. Because in the absence of a hearing before the Department, no "final order" of the Department is before us, Opponents' judicial review is premature and we will transfer the case to the Department for such a hearing.

*Id.* at 807.

The majority briefly mentions *PCMS* in footnote 8 of the majority opinion, but it dismisses its importance in light of the Supreme Court's decision in *LaFarge II*, overruling this Court's decision in *LaFarge Corporation v. Commonwealth of Pennsylvania, Insurance Department*, 690 A.2d 826 (Pa. Cmwlth. 1997) (*LaFarge I*). The Court's decision in *PCMS*, however, was not based on *LaFarge I*. Indeed, *LaFarge I* is not even cited in the Court's opinion in

PKB-4

*PCMS.* That is because the two cases addressed two different questions. *LaFarge I* and *LaFarge II* focused on the procedures that the Department must follow *prior to* approving certain corporate transactions by and between insurance companies in order to afford the public "due process." *PCMS*, by contrast, addressed the questions of whether an approving determination under the IHCA, once issued, is an adjudication appealable to this Court and the availability of *post-approval* formal proceedings within the Department to challenge an approving determination. The Supreme Court did not disapprove of this Court's disposition in *PCMS* in *LaFarge II* (nor did it cite it at all), and this Court has never overruled it.

For these reasons, I would quash the appeal of the Intervention Order and transfer the appeal of the Approving Determination to the Department in accordance with *PCMS*. Upon transfer, the Department would conduct a formal proceeding in accordance with the AAL and GRAAP to determine Petitioners' standing to challenge the Approving Determination. If the Department would conclude that Petitioners had standing, the Department would then proceed to adjudicate Petitioners' challenge to the approving determination. I, therefore, respectfully dissent.

P. KEVIN BROBSON, Judge