[J-51-2020] [MO: Donohue, J.]
**IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT**

| COMMONWEALTH OF PENNSYLVANIA, | : | No. 30 EAP 2019 |
|---|---|---|
| | : | |
| Appellee | : | Appeal from the Judgment of |
| | : | Superior Court entered on March 5, |
| | : | 2019 at No. 3246 EDA 2017 |
| v. | : | affirming the Judgment of Sentence |
| | : | entered on September 12, 2017 in |
| | : | the Court of Common Pleas, |
| KEITH ALEXANDER, | : | Philadelphia County, Criminal |
| | : | Division at No. CP-51-CR-0005971- |
| Appellant | : | 2016. |
| | : | |
| | : | SUBMITTED:  April 28, 2020 |

**DISSENTING OPINION**

**JUSTICE MUNDY**                                    **DECIDED:  December 22, 2020**

I respectfully dissent from the majority's opinion, as I would decline to overrule this

Court's decision in *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014).  In my opinion, the

majority declines to honor the tenets of *stare decisis*, instead opting to impart its desired

outcome in the face of a clear rule of law.  Further, I do not endorse the *Edmunds* analysis

adopted by the majority, as I would continue to follow the analysis offered by the lead

opinion in *Gary*.

In *Gary*, Justice McCaffery, along with two other Justices, concluded that (1) Article

I, Section 8 of the Pennsylvania Constitution provides no greater protection than does the

Fourth Amendment of the United States Constitution with regard to warrantless searches

of automobiles, and (2) that under our state charter, the only prerequisite for a warrantless

search of an automobile that is needed is probable cause—no exigency beyond the

inherent mobility of a vehicle is needed.  *See Gary*, 91 A.3d at 124, 138.  Then-Justice Saylor authored a concurring opinion.

Plainly, then-Justice Saylor's concurrence espoused the prevailing viewpoint offered by the three other Justices.  Specifically he stated his agreement with the lead Justices in adopting the federal automobile exception.  *See Gary*, 91 A.3d at 138 - 9 ("Although I have some reservations, for the sake of certainty and consistency, I join the lead Justices in adopting the federal automobile exception.").  What the concurrence did not offer is an alternative basis pursuant to which this Court should resolve the underlying issues.  Instead of recognizing the obvious meaning of this decision, the majority offers a hair-splitting analysis that subverts the clear meaning of the majority of Justices who considered and decided *Gary*.  *See, e.g.*, Majority Op. at 32-34 ("We believe that [then-Justice Saylor's] concurring opinion, while certainly reflecting a carefully considered view based on this Court's difficulties in applying the exception[,] does nothing more than establish the narrowest rationale for the result in *Gary*: the bright-line federal exception provides certainty and consistency in application.").  In this way, I disagree with the majority's treatment of *Gary*, its precedential value, and the decision's clear and obvious import. Rather than presenting this Court with an "unusual circumstance," Concurring Op. (Baer, J.) at 2, *Gary*'s holding requires our adherence.

*Stare decisis* is a "foundation stone of the rule of law."  *Michigan v. Bay Mills Indian Community*, 572 U.S. 782 (Pa. 2014).  It "maintains that for purposes of certainty and stability in the law, 'a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same."  *Stilp v. Commonwealth*, 905 A.2d 918, 966 - 67 (Pa. 2006) (quoting *Burke v. Pittsburgh Limestone Corp.*, 100 A.2d 595, 598 (Pa. 1953)).  It commands our respect for the prior decisions of this Court, and the legal rules contained therein.  *Stilp*, 905 A.2d at 954 n. 31.  Further, *stare decisis* demands we apply

our closely-decided precedents as equally as we do our unanimously decided cases. *See Kimble v. Marvel Entertainment, LLC* 576 U.S. 466 (2015) ("[I]t is not alone sufficient that we would decide a case differently now than we did then."). When we become untethered from our previous decisions, we instantly implicate this court's credibility and our ability to effectively adjudicate the many types of cases upon which litigants look to us for guidance.[1]

Abandoning a precedential decision is never a small matter. I echo my colleagues' concerns that the majority's decision is rooted in its sincere belief that *Gary* was wrongly decided. Dissenting Op. (Dougherty, J.) at 3; Dissenting Op. (Saylor, C.J.) at 3. It damages our rule of law to disregard the language of a precedential decision simply because the opportunity now presents itself. The reality inherent in adjudicating important matters in this Commonwealth is that the law does not always follow one's desired course. Inevitably, the law will reflect policies and procedures that do not seem to fit the best interests of the Commonwealth. *See Maloney v. Valley Med. Facilities, Inc.*, 984 A.2d 478, 489-90 (Pa. 2009) ("[The law] develops incrementally, within the confines of the circumstances of cases as they come before the Court."). In my opinion, it is important to respect the deliberative process undertaken by previous panels, as well as the conclusions at which they arrived. In this respect, it should be of no moment that *Gary* is a recent decision, or that it has not been relied upon for a longer period of time. These considerations are not our goalposts, nor should they be. Rather, this Court must be guided by the reasoned decision arrived at by a majority of the learned individuals of this Court.

---

[1] Justice Dougherty's dissenting opinion offers a cogent overview of the principles of *stare decisis*, and I subscribe to his analysis regarding the foundational aspects of what our law prescribes.

In its argument, the Commonwealth asserts that this Court is not "writing on a blank slate", and implores this Court to follow the tenets of *stare decisis*. Commonwealth's Brief at 15. It further points out that since none of our recognized reasons for revisiting precedent exist, throwing our law back into flux would "breed cynicism and create uncertainty." *Id.* at 18. It is true that our strongly held preference for *stare decisis* is not absolute. *See Payne v. Tennessee,* 501 U.S. 808 (1991) ("*Stare decisis* is not an inexorable command; rather it is a principle of policy and not a mechanical formula of adherence to the latest decision.") (internal citations omitted). Our laws should be flexible enough to "[permit] adjustment and development. . ., recognizing that precedent is not infallible and judicial honesty demands corrective action in appropriate cases." *Olin Mathieson C. Corp. v. White C. Stores*, 199 A.2d 266, 268 (Pa. 1964). As we have stated, this Court must not hesitate to change directions where it is truly warranted. *See, e.g.*, *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 352 (Pa. 2014). However, our judgment should inherently encompass the wisdom to know when those situations arise. I respectfully submit this does not fall into that category, as I am persuaded by the Commonwealth's rightful cause for concern.

While it is true that constitutional matters require special consideration under our doctrine, *Gary* pronounced an appropriate and cognizable rule of law. As was persuasively argued by the Commonwealth, I would uphold our rule of law and continue to apply *Gary*'s bright-line ruling. *See, e.g., Dickerson v. U.S.*, 530 U.S. 428 (2000) ("While *stare decisis* is not inexorable command, particularly when interpreting the Constitution, doctrine of *stare decisis* carries such persuasive force, even in constitutional cases, that departure from precedent must be supported by some special justification.") (internal citations omitted). Specifically, I find no fault in the *Edmunds* analysis endorsed by the majority of Justices.

Under *Commonwealth v. Edmunds*, 586 A.2d 887 (Pa. 1991), we are charged with first considering the text of the Commonwealth's constitutional provisions. *Edmunds*, 586 A.2d at 895. As was pointed out by the majority, our constitution states that "[t]he people shall be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures." Pa. Const., Art. I, Sec. 8. The Fourth Amendment recognizes the right of the people to be secure in their "effects." U.S. Const. amend IV. I join Chief Justice Saylor in concluding that the protections offered by both charters are one in the same, as evidenced by both the text of both passages, as well as this Court's decisions. On multiple occasions, we have pointed out the near identicalness of both passages, and the requisite treatment both require. *See e.g., Commonwealth v. Russo*, 934 A.2d 1199 (Pa. 2007) (Interpreting Article I, Section 8 the same as the Fourth Amendment in the course of considering the extent of the open fields doctrine); *Commonwealth v. Gray*, 503 A.2d 921, 926 (Pa. 1985) ("[T]here is no substantial textual difference between the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution that would require us to expand the protections afforded under the federal document.").

In ignoring the *Edmunds* analysis offered in *Gary*, the majority offers an expansive view of the privacy concerns that our charter allegedly envelops. However, like then-Justice Saylor and the majority of Justices in *Gary*, the most persuasive evidence to me is the sheer congruity of both passages. The majority dismisses this analysis, saying "we must consider our charter as a whole in terms of establishing a set of normative values that limits the government's authority to search without a warrant, as opposed to the dissent's view, which attempts to divine the framers' intent based solely on a textual comparison of Article I, Section 8 and the Fourth Amendment." Majority Op. at 49. I respectfully suggest that our normative values are derived from the very words we use.

As the majority of Justices in *Gary* decided, we need not look past the text of both charters to understand and apply their meaning.

Moreover, under the fourth *Edmunds* factor, we are charged with evaluating the policy considerations underlying our decisions, including issues of state and local concern. *Edmunds*, 586 A.2d at 895. The majority adopts Justice Todd's dissent in *Gary*, which, in regards to this portion of the *Edmunds* analysis, concluded that the lead decision failed to adequately acknowledge the role technological advancements has played in terms of securing a warrant. *See Gary*, 91 A.3d at 154 – 160. The majority opinion cites Justice Todd's dissent specifically to say that "police officers [are] eminently capable as trained professionals of making a basic assessment of whether it is reasonably practicable for them to seek a warrant, under all of the circumstances existing at the time they wish to search an automobile." Majority Op. at 20 (citing *Gary*, 91 A.3d at 159).

While the advent of technology has certainly transformed the ways in which courts envision the warrant securing process, I believe it best to defer to the Commonwealth regarding its expertise in terms of policing. As evidenced by this Court's own fractured viewpoints, it can be difficult to advance and maintain a clear rule of law that properly balances effective law enforcement with individual liberties. This discord is a living reality for those who are charged with enforcing our laws, oftentimes in fast-moving and imprecise scenarios. In my opinion, the majority's decision does not adequately contemplate the stated needs of law enforcement; rather, it adopts a viewpoint that merely shifts, yet again, the decision-laden police officer's inquiry. I respectfully submit *Gary*'s holding should stand, in part because it offered a bright-line rule already in effect throughout this Commonwealth, and because it deferred to the needs of those we entrust with the difficult job of policing.

By failing to honor *Gary*, the majority's decision imposes upon the principles of *stare decisis* and impedes the credibility over which we preside the important issues before us.  In so doing, it throws into impunity an *Edmunds* analysis that properly contemplated the levels of federalism dictated by our state charter and the United States Constitution.  Based on these considerations, I respectfully dissent.